DIANA DOYLE BANTI V. STATE

No. 28,015. February 1, 1956.

State's Motion for Rehearing Denied
(Without Written Opinion) April 25, 1956.

*Joe Newman,* and *Sanders* and *Francis,* Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady* and *Thomas D. White,* Assistants District Attorney, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The appeal is from a conviction for the misdemeanor offense of unlawfully practicing medicine.

Trial was before the court on a plea of not guilty, and the court assessed as punishment 10 days in jail and a fine of $350.00.

Trial was had and judgment rendered on July 6, 1955, and on the same day appellant's motion for new trial was filed. The term of court adjourned July 30, 1955.

The motion for new trial was overruled during the subsequent August term of court, on August 11, 1955, and on that day an appeal bond was approved by the sheriff and appellant is at liberty under said bond.

Art. 830 V.A.C.C.P., construed in the light of Art. 755 V.A.C.C.P. as amended by the 52nd Legislature, requires that during the term at which notice of appeal is given, the defendant shall enter into a recognizance. Hunt v. State, 160 Tex. Cr. R. 115, 269 S.W. 2d 385. Only after the expiration of such term may he obtain release from custody upon an appeal bond.

Appellant being at large under an appeal bond given during the term of court at which her motion for new trial was overruled and notice of appeal was given, this court is without jurisdiction to enter any order other than to dismiss the appeal.

The appeal is dismissed.

ON APPELLANT'S MOTION TO REINSTATE APPEAL

WOODLEY, Judge.

Appellant having entered into a proper bond on appeal, the appeal is reinstated.

The complaint and information were drawn under Arts. 739 and 741(2) V.A.P.C. and alleged that appellant did "unlawfully treat and offer to treat Julia Valdez, a human being, for a disease and physical disorder, mental and physical, and a physical deformity and injury and to effect cure thereof * * *" and further alleging that she charged therefor and that she did so without first having registered a certificate evidencing her right to practice medicine.

The evidence is undisputed and shows that Julia Valdez was pregnant and that appellant, for an agreed fee of $40, rendered her services at child birth as a midwife, such being her occupation since 1924, and her confession stating that she had "delivered thousand and thousand of babies here in Houston."

The state urges the sufficiency of the evidence in the following summary:

"The written statement of appellant which was introduced by the state clearly shows a violation of Sec. 2, of V.A.P.C. Art. 741. Appellant in her written statement related that about a month prior to April 11, 1955, Julia Valdez was brought to her by Julia Valdez' mother-in-law to be examined. Appellant stated she examined Julia Valdez 'and found her to be O.K.;' she (Julia Valdez) was about eight months pregnant at the time. Appellant admits she was asked by the mother-in-law if she would come and deliver the baby when the time came and she told her that she would for $40.00. On the morning of April 11, 1955, after being contacted by the complainant's mother-in-law, appellant went to the home of the complainant, looked at her and saw that the mouth of her womb was open about the size of 'fifty cents.' Appellant put clean sheets on the bed and clean clothes on the complainant, 'washed her all the way with alcohol,' gave her a shot containing 1/16 grains of Pituitrin in the right arm and put her to bed. Appellant in her statement related that 'this medicine is to help have strain so you can have a baby.' Appellant then put on her rubber gloves, put vaseline on her hands, and started to work on her. Appellant stated that Mary (this is the name by which she refers to complainant's mother-in-law) and another lady 'helped me out and they held Julia's legs for me to be able to work with her; when the baby was born 'I bring the baby out and I told Mary the baby got no life in it.' Appellant said: 'I then cleaned the baby up and tied up the naval, and I worked with the baby and tried to make it come to, but it looked dead to me; I put the baby in warm water about five minutes and all the time I worked the baby to try to get life into it.' According to appellant, she then took the baby out of the water, put it in clean clothes, put it in another room, and told Mary to call an ambulance; she then cleaned the mother and took care of the after-birth.'

"Whether the $40.00 owed the appellant for her services has been paid or not is not revealed by the record. However, the offer was made to render the services for $40.00; the offer was accepted, and the services were rendered. Thus appellant charged for her services." ·

Appellant, on the other hand, says that childbirth is not a disease or disorder but a normal function of womanhood, and that there is no evidence to sustain the allegations of the information or to show that appellant was practicing medicine

as defined in Sec. 2 of Art. 741, V.A.P.C., Julia Valdez not having any disease, disorder, deformity or injury.

The state's position that effect should be given to the fact that the midwife is not one of the methods of practice exempted by Art. 740 P.C., referred to in Art. 741 V.A.P.C., cannot be sustained.

"No person shall be punished for any act or omission, unless the same is made a penal offense, and a penalty is affixed thereto by the written law of this State." Art. 3 P.C.

Hence, unless the acts and conduct of appellant were made a penal offense by statute, and the complaint and information charged that she committed the acts or was guilty of the conduct or omission made penal by statute, she could not be legally convicted.

A leading case upon the subject of midwifery is Commonwealth v. Porn (Mass.) 82 N.E. 31, from which is derived the following conclusions.

"Midwifery" is defined to be the practice of obstetrics. Obtetrics is recognized to be a highly important branch of the science of medicine, an obstetrician being a physician specializing in obstetrics.

It would appear, however, that the legislature of Texas has not defined the practice of medicine so as to include the act of assisting women in parturition or childbirth insofar as the practice of medicine without registering a certificate evidencing the right to so practice is made punishable as an offense.

No reason appears why the legislature could not establish a line of statutory demarcation separating the work of the midwife from that of the practice of medicine.

We agree that childbirth is a normal function of womanhood, and that proof that appellant for a consideration agreed to and did attend Julia Valdez at childbirth does not support the allegation of the complaint and information that she treated or offered to treat Julia Valdez for a disease, disorder, deformity, or injury or effect a cure thereof.

Not only has the legislature failed to include within the definition of "practicing medicine" the branch of medical science

which has to do with the care of women during pregnancy and parturition called "obstetrics" but has in a number of statutes recognized practical obstetrics or midwifery as outside the realm of the medical practice act.

Art. 4441 V.C.S. requires that all doctors, midwives, nurses, or those in attendance at child birth, use prophylactic drops in the child's eyes.

And the Sanitary Code, Art. 4477 V.C.S., contains the following rules appertaining the midwives:

"Rule 39a. Report of stillborn. * * * (b) Except as otherwise provided, the medical certification shall be made by the physician, if any, in attendance at the stillbirth. Midwives shall not sign certificates of stillbirth, but such cases, and stillbirths occurring without attendance of either physician or midwife shall be treated as deaths without medical attendance as provided in Rule 41a, Article 4477, Revised Civil Statutes of Texas. * * *."

Rules 46a and 47a authorize and require a midwife to sign the birth certificate.

The State cites DeHay v. State, 158 Tex. Cr. R. 262, 254 S.W. 2d 513, where under a similar complaint and information a conviction under Arts. 739 and 741 V.A.P.C. was upheld, the patient being a pregnant woman. Vlassis v. State, No. 28068, decided February 15, 1956, 162 Tex. Cr. Rep. 484, followed the holding in DeHay v. State.

In each of these cases the defendant held himself out to be a practitioner of medicine, maintained an office and treated others for diseases and disorders. Neither DeHay nor Vlassis was a midwife and the services rendered to the pregnant woman were not confined to her care at childbirth.

We should not be understood as holding that the statute could not be violated so long as the patient was a pregnant woman. Of course pregnancy would not prevent a woman from having a disease, disorder, deformity or injury for which she would require the services of a practitioner of medicine.

Because the evidence is insufficient to sustain the conviction, the judgment is reversed and the cause is remanded.