

# The Attorney General of Texas

December 19, 1978

**JOHN L. HILL**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Max C. Butler, President
Texas State Board of Medical Examiners
Southwest Tower Building, Suite 900
211 East Seventh Street
Austin, Texas 78701

Opinion No. H- 1293

Re: What services may a midwife or nurse midwife perform?

Dear Dr. Butler:

You ask several questions about the services which midwives may legally provide in Texas. Articles 4510, 4510a, and 4510b, V.T.C.S., prohibit the practice of medicine by persons who are not licensed by the Board of Medical Examiners. "Practicing medicine" is defined as follows:

> Any person shall be regarded as practicing medicine within the meaning of this Chapter:
> 1. Who shall publicly profess to be a physician or surgeon and shall diagnose, treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof.
> 2. Who shall diagnose, treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof and charge therefor. . . .

V.T.C.S. art. 4510a.

The Court of Criminal Appeals held in Banti v. State, 289 S.W.2d 244 (Tex. Crim. App. 1956), that a midwife who assisted a woman in parturition was not practicing medicine within the statutes. It found no reason why the Legislature could not distinguish in the statutes between the work of a midwife and the practice of medicine. Since childbirth is a normal function of womanhood, the defendant had not treated her client "for a disease, deformity or injury or effect a cure thereof." 289 S.W.2d at 247. The court stated as follows:

> Not only has the Legislature failed to include within the definition of 'practicing medicine' the branch of medical science which has to do with the care of

women during pregnancy and parturition called 'obstetrics'
but has in a number of statutes recognized practical
obstetrics or midwifery as outside the realm of the medical
practice act.

Id. at 247. See V.T.C.S. art. 4441 (doctors, midwives, nurses, or those in attendance at childbirth shall put drops in child's eyes); art. 4477, Rule 46a (physician, midwife, or person acting as midwife shall file birth certificate). The court distinguished two prior opinions upholding convictions for the unauthorized practice of medicine where the patient was a pregnant woman. See Vlassis v. State, 286 S.W.2d 934 (Tex. Crim. App. 1956); DeHay v. State, 254 S.W.2d 513 (Tex. Crim. App. 1953). In each case, the defendant held himself out as a practitioner of medicine and treated others for diseases and disorders. Neither defendant was a midwife and the services rendered to the pregnant woman were not confined to her care at childbirth. Finally, the court noted that pregnancy would not prevent a woman from having a disease, disorder, deformity or injury for which she would require the services of a practitioner of medicine.

You do not question that legal authority exists for a midwife to assist a woman in childbirth. See also V.T.C.S. art. 4445a, § 1 (physician or other person permitted by law to attend a pregnant woman shall have blood sample tested for syphilis); V.T.C.S. art. 4477, Rule 22 (nurse or midwife shall report inflammation of newborn's eyes); Rule 49a (midwives shall register with local registrar of vital statistics). However, you have asked five specific questions about the range of services which a midwife may provide without engaging in the practice of medicine.

We believe that some of your questions cannot be answered without the investigation and resolution of fact questions. See, e.g., Green v. State, 305 S.W.2d 609 (Tex. Crim. App. 1957) (expert testimony that application of coagulating needle constituted the practice of medicine). We do not resolve fact questions in the opinion process; however, we can answer the legal questions you present.

Your first two questions are as follows:

1. May a midwife perform an episiotomy [incision to prevent tearing]?

2. Is the midwife authorized to repair the episiotomy or a laceration of the birth canal by suturing the wound following delivery of the child?

We believe your first two questions cannot be fully answered without the resolution of fact questions. Whether or not a midwife may perform and repair an episiotomy or suture lacerations would depend on whether these services are generally provided in connection with normal childbirth. In Banti, the midwife gave

her client an injection.  The court did not single out that particular act as the practice of medicine, apparently viewing it as one aspect of assistance at childbirth.  If the facts show that these services are incident to normal childbirth, as briefs submitted to us suggest, then we believe the courts would hold that a midwife may provide them.

Your third question is as follows:

> 3. Is a midwife authorized to possess and administer drugs or medication which are classified as either 'dangerous drugs' under the provisions of article 4476-14, V.T.C.S., or as 'controlled substances' under article 4476-15, V.T.C.S.?

Article 4476-14, V.T.C.S., regulates the sale and distribution of "dangerous drugs," defined to include certain specific substances and any drug or device bearing the legend: "Caution: federal law prohibits dispensing without prescription." Sec. 2(3). It makes several exceptions to its prohibitions and regulations regarding the delivery of dangerous drugs.  Thus a "practitioner," defined to include a licensed physician, may dispense dangerous drugs in the course of his practice. Secs. 2(e), 3(a)(2).  Such drugs may be delivered to or possessed by the agents and employees of a practitioner for use in the usual course of business.  Sec. 4(a), (b).  Thus, a midwife may possess such drugs as a physician's agent.

Article 4476-15, V.T.C.S., regulates the manufacture, delivery, possession, and administration of certain "controlled substances," which are listed by name in Schedules I through V of the act. Secs. 2.01 - 2.07.  The Commissioner of Health may add substances to the schedules or delete or reschedule substances enumerated in the act.  Sec. 2.09(a).  Any person who dispenses a controlled substance must possess a valid registration from the Director of the Texas Department of Public Safety.  Sec. 3.01(a); see § 1.02(9).  A licensed physician may receive a registration to dispense substances in Schedules II through V upon application and payment of a fee.  No provision is made for registration of midwives.  However, the agent or employee of a registered dispenser of any controlled substance may possess controlled substances in the usual course of business without also registering.  Sec. 3.01(e)(1).  A registered physician is a "dispenser" within the terms of the act.  Sec. 1.02(10), (11).  In addition, a hospital or other institution may be registered to administer a controlled substance.  Sec. 1.02(24).  Thus a midwife acting as the agent or employee of a registered physician or hospital is not subject to the registration requirement found in section 3.01(a).  In addition a practitioner "or a person acting under his direction" is excepted from the penalty provision for possession of a hypodermic containing a controlled substance with intent to inject it in a human being.  Sec. 4.07(a).

Your fourth question is as follows:

> 4. Is a midwife authorized to make a diagnosis of disease or obstetrical complication?

It is clear that the diagnosis of a "disease or disorder, . . . physical deformity or injury" constitutes the practice of medicine.   V.T.C.S. arts. 4510, 4510a, 4510b. Consequently, midwives may not make such diagnoses unless they are licensed by the Board of Medical Examiners.

Your final question is as follows:

> 5.  Do the statutes of this state recognize any difference in the authority for the delivery of midwife services by a 'lay midwife,' a 'nurse midwife,' or a 'certified nurse midwife?'

In our opinion, the statutes do recognize differences. Nurse midwives and certified nurse midwives are persons who have been licensed by the Board of Nurse Examiners as professional nurses. Thus the statutes defining "professional nursing" are relevant to their authority to perform midwife services. "Professional nursing" is defined in part to include

> the performance for compensation of any nursing act (a) in the observation, care and counsel of the ill, injured or infirm; (b) in the maintenance of health or prevention of illness of others; (c) in the administration of medications or treatments as prescribed by a licensed physician or dentist. . . .

V.T.C.S. art. 4518, § 5. This statute provides independent authority for a registered nurse to perform some of the services you inquire about. For example, a nurse may administer treatments prescribed by a physician.  Thus, even if performing an episiotomy or making sutures were held to constitute medical treatment, a registered nurse could provide these services at the doctor's direction.  See also Attorney General Opinion WW-1403 (1962) (duty of nurse to carry out medical treatment prescribed by a doctor).  Nurses also have authority under article 4518, section 5(c) to administer dangerous drugs or controlled substances prescribed by a licensed physician.  See Attorney General Opinion H-737 (1975).  The authority to observe the ill, injured or infirm given by section 5(a) of article 4518 would in our opinion include the authority to watch for and recognize abnormal symptoms of pregnancy which might lead to a diagnosis of disease or obstetrical complication by the physician.

In each instance, the registered nurse performs services at the instruction or with the supervision of a licensed physician.  The appropriate degree of instruction or supervision by the physician will vary with the nurse's experience and qualifications.  See generally Attorney General Opinions H-395 (1974); H-27 (1973); Annot., 63 A.L.R.3d 1020 (1975).  A certified nurse midwife has completed advanced training in midwifery and has been certified by the American College of Nurse-Midwives, a private body.  These qualifications are relevant to a determination of the appropriate degree of instruction and supervision to be provided by a physician.

## S U M M A R Y

The Court of Criminal Appeals has held that midwifery is not the practice of medicine. If it can be shown that performing and repairing an episiotomy or suturing lacerations are services generally performed in connection with normal childbirth, then a midwife may legally perform such services. A midwife may possess and administer statutorily regulated drugs as the agent of a licensed physician. Midwives may not diagnose a disease or obstetrical complication. Registered nurses who are nurse midwives or certified nurse midwives have authority under article 4518, section 5 to perform the services inquired about.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn