In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00009-CR


______________________________




JEREMY LYNN HAMMOCK, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Sixth Judicial District Court


Lamar County, Texas


Trial Court No. 19881




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Jeremy Lynn Hammock was convicted by a jury for possession of chemicals with
intent to manufacture a controlled substance--methamphetamine. The jury assessed
punishment at twenty years' imprisonment and a $10,000.00 fine. On appeal, Hammock
contends the conviction should be reversed because 1) the evidence is legally and
factually insufficient to support the conviction or the deadly weapon finding; 2) the State
made final argument outside the record; 3) the State was allowed to introduce evidence
of an extraneous offense despite failing to give him pretrial notice; and 4) he received
ineffective assistance of counsel.

 Hammock was initially stopped by a police officer for driving without his seat belt
engaged. The officer testified that, when Hammock pulled over, he saw him rummaging
around behind his seat and thought he was trying to hide something. Hammock got out
of the pickup truck and told the officer he had a weapon and where it was located, and also
that he had some "shit" in the pickup. The officer found a gun behind the arm rest, and a
gym bag containing metal and plastic containers labeled as containing substances which
he testified he believed could be used in manufacturing methamphetamine. 

 Hammock was indicted for acts committed on or about January 30, 2003. The
amended indictment on which he went to trial alleged that, "with intent to manufacture
methamphetamine, Hammock possess(ed) an immediate precursor, to-wit: red
phosphorus, lye, sulfuric acid, hydrochloric acid, muriatic acid, an organic solvent, alcohol,
acetone, or a petroleum distillate."

 At the end of trial, the State abandoned its allegations as to "petroleum distillate,
organic solvent, and hydrochloric acid." The trial court's charge instructed the jury that it
could find Hammock guilty of the offense of "possession of certain chemicals with intent
to manufacture a controlled substance as charged in the indictment." In the application
paragraph, the jury was further instructed it could find Hammock guilty if it determined that
he possessed "an immediate precursor, to-wit: red phosphorus, or lye, or sulfuric acid, or
muriatic acid, or alcohol, or acetone." (Emphasis added.)

 This prosecution was based on the 2002 version of Tex. Health & Safety Code
Ann. § 481.124. (1) The statute provided three different ways in which possession of specific
chemicals was criminalized. The offense was committed if, with intent to manufacture the
controlled substance, the person possesses or transports (1) anhydrous ammonia (not
relevant to this prosecution); (2) an immediate precursor; or (3) a chemical substance
subject to regulation under Section 481.077. The State did not seek to prosecute based
either on (1) or (3), but solely on Hammock's possession of an immediate precursor. The
statute went on to create a presumption of guilt if the actor possessed specific chemicals: 
anhydrous ammonia, (or) lithium removed from a battery and preserved, or more than a
specified amount of ephedrine or pseudoephedrine and either anhydrous ammonia or a
combination of three categories of chemicals thereafter listed. In this case, there was no
allegation or proof that Hammock had anhydrous ammonia, lithium, or ephedrine or any
variant thereof.

 Section 481.002(22) of the Texas Health and Safety Code defined "[i]mmediate
precursors" as a substance that the commissioner (of the Texas Department of Health)
found to be an immediate precursor. Tex. Health & Safety Code Ann. § 481.002(22)
(Vernon Supp. 2006). The commissioner, on August 21, 2002, created such a list, found
in the Texas Register. See 27 Tex. Reg. 8327-28 (2002). That list is lengthy, but only
three of the six chemicals named in the amended indictment (after the State abandoned
certain others), and in the jury charge, appear on the commissioner's list. The list includes
red phosphorus, sulfuric acid, and acetone as immediate precursors. It does not mention
lye, muriatic acid, or alcohol. By definition, then, at the time of Hammock's arrest, those
three items--lye, muriatic acid, and alcohol--were not "immediate precursors," and even
though there was evidence that Hammock had possession of containers so labeled, and
even if we believed that provided some evidence about the content of those containers,
Hammock could not be convicted for possessing those items under this statute. (2)

 The jury charge thus explicitly allows conviction for actions that were not an
offense--as well as actions that could be an offense--charged in the disjunctive. There is
at best a statistical 50-50 chance that Hammock was sent to prison for lawful possession
of chemicals instead of illegal possession of chemicals. There was no motion to quash the
indictment and no trial objection to the charge. Although counsel complains at length on
appeal that the evidence is insufficient to show he possessed immediate precursors, he
has raised no specific issue alleging charge error. 

 This is not a situation where different ways to commit the offense were alleged,
though that was surely the intention of the State. Rather, the State alleged possession of
three items with intent to unlawfully manufacture a controlled substance--which was a
criminal act; it also alleged, however, possession of three items with intent to manufacture
a controlled substance that could not be used to support a conviction for that offense. In
short, there is no way to determine the specific chemicals the jury actually convicted
Hammock of possessing--the ones it was unlawful for him to possess or the ones he could
have lawfully possessed.

 Our task would be made easier if all the evidence and argument surrounded the one
chemical we have concluded has sufficient evidence in the record to support: the red
phosphorus. It does not. The State argued that, although muriatic acid was used in
swimming pools, and lye was used to clean out drains, that was not why Hammock had
them--that he had everything listed in the indictment to make methamphetamine and that
he had the other items in the bag for manufacturing as well. Although there was evidence 
those items are part of the ingredient list for manufacturing methamphetamine, they are
not immediate precursors.

 We have no way to know that the jury convicted Hammock for possessing only
those immediate precursors alleged that were on the commissioner's list--red phosphorus,
sulfuric acid, or acetone--as opposed to those chemicals that were not on the list--lye,
muriatic acid, and alcohol. If the jury convicted Hammock based on any one of the latter
list--fully half of the options presented-then it convicted him for behavior that did not
constitute an offense. Although the State had, at the time of trial, destroyed the
substances seized from Hammock's vehicle, it introduced photographs of all of them. 
There is, therefore, no way to say the jury convicted him only for the three immediate
precursors that are on the commissioner's list.

 This analysis brings us to the question of whether we can choose to address the
error, although not assigned as an issue on appeal and not raised at trial. Historically,
there has never been any doubt that courts of appeals could consider unassigned error in
its discretion, typically when the appellate courts' review of the record disclosed error that
should be addressed in the interest of justice. See Wright v. State, 981 S.W.2d 197, 199
n.2 (Tex. Crim. App. 1998) (appellate court may, in its discretion, consider unassigned
error). (3) The conceptual and constitutional underpinning for this authority has been
discussed a number of times over the last century--and has been recently utilized directly
by several of the courts of appeals, which have reiterated the usefulness of that authority
in situations where the cause of justice--and thus the reputation and believability of the
judicial system--would be severely damaged without the reasoned application of that
search for justice, rather than a mere search for support for criminal convictions. Sanchez
v. State, 182 S.W.3d 34, 58 (Tex. App.--San Antonio 2005, pet. granted); Chafin v. State,
95 S.W.3d 549, 554 (Tex. App.--Austin 2002, no pet.). 

 "A constitutional grant of power of appellate jurisdiction treats a right of appeal in
criminal cases 'as a remedy to revise the whole case upon the laws and facts, as exhibited
in the record.'" Carter v. State, 656 S.W.2d 468, 468-70 (Tex. Crim. App. 1983) (quoting 
Republic v. Smith, Dallam 407 (Tex. 1841) (cited in Bishop v. State, 43 Tex. 390, 400
(1875)). "Once jurisdiction of an appellate court is invoked, exercise of its reviewing
functions is limited only by its own discretion or a valid restrictive statute." Carter, 656
S.W.2d at 469. After jurisdiction attaches to a particular cause, a broad scope of review
and revision has been asserted by the appellate courts of this state--one that is still
recognized, acknowledged, and confirmed by the Legislature. Id.; see also Tex. Code
Crim. Proc. Ann. art. 44.25 (Vernon Supp. 2006). In accord with Carter are Lopez v.
State, 708 S.W.2d 446, 448-49 (Tex. Crim. App. 1996); Barney v. State, 698 S.W.2d 114,
123 (Tex. Crim. App. 1985); Hall v. State, 86 S.W.3d 235, 239 (Tex. App.--Austin 2002,
pet. ref'd); Frost v. State, 25 S.W.3d 395, 399 (Tex. App.--Austin 2000, no pet.);
Rodriguez v. State, 939 S.W.2d 211, 219-20 (Tex. App.--Austin 1997, no pet.); State v.
Lara, 924 S.W.2d 198, 201 n.3 (Tex. App.--Corpus Christi 1996, no pet.); and Garza v.
State, 676 S.W.2d 185, 187 (Tex. App.--Corpus Christi 1984, pet. ref'd) (holding that 
authority of a court of appeals to consider unassigned error in criminal cases not open to
question).

 That concept has been undermined recently by several cases decided by the Texas
Court of Criminal Appeals. Those cases contain language stating that the "unassigned
error" concept is much narrower than ever before stated. The court recently defined
unassigned error (possibly inadvertently) as "a claim that was preserved in the trial below
but was not raised on appeal." See Pena v. State, 191 S.W.3d 133, 136 (Tex. Crim. App.
2006) (citing Rezac, 782 S.W.2d at 871 (which did not limit unassigned error to preserved
error)).

 We make these observations while, at the same time, noting that the Texas Court
of Criminal Appeals has also issued another recent opinion approving the action of the
Waco  Court  of  Appeals  in  considering  unassigned  error.  Olivas  v.  State,  Nos. PD-1933-04, PD-1934-04, PD-1935-04, 2006 WL 2619964 (Tex. Crim. App. Sept. 13, 2006). 
In Olivas, the court addressed unassigned--and unpreserved--charge error ruled on by
the Waco court. The court stated that, "[W]hen jury-charge error is not raised at trial, an
appellate court may review that asserted (or, as in this case, unassigned) error, but a much
greater degree of harm is required for reversal when the error is not properly preserved." 
Id. at *4. The useful scope of unassigned error is thus not entirely nonexistent. 

 The Texas Court of Criminal Appeals has also condemned the perceived reframing
of points of error by the El Paso Court of Appeals. See State v. Bailey, 201 S.W.3d 739,
742-43 (Tex. Crim. App. 2006). In explaining its reasoning, with no reference to the
unassigned error concept, the court stated, in a rules-based opinion that,

 Although Rule 38.1(e) explains that "the statement of an issue or point
[presented for review] will be treated as covering every subsidiary question
that is fairly included," the issue of who should make the determination of
whether CDs qualify as securities under the Texas Securities Act is clearly
separate from whether the trial judge in this case, in response to the
agreement of the parties, erred in deciding that the CDs in question were
securities as a matter of law. Rule 38.9 instructs that the briefing rules are
to be construed liberally, allowing the appellate court to "require additional
briefing, and make any other order necessary for a satisfactory submission
of the case" if it "determines . . . that the case has not been properly
presented in the briefs, or that the law and authorities have not been properly
cited in the briefs." Tex. R. App. Proc. 38.9(b). While this provision gives
the appellate courts some discretion in remedying "substantive defects" in
parties' briefs, it does not allow the court of appeals to reach out and reverse
the trial court on an issue that was not raised.

 In a related matter, the court also re-emphasized that a conviction, no matter how
wrongly obtained, must nevertheless be affirmed when error is not preserved below. "It
violates 'ordinary notions of procedural default' for a court of appeals to reverse a trial
court's decision on a legal theory that the complaining party did not present to the trial
court." Id. at 743 (citing Hailey v. State, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002)).

 Even that apparently strict rule, however, is not entirely free from exceptions, as the
court has also recognized that some issues may indeed be raised for the first time on
appeal. See Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (explaining
when double jeopardy may be raised for first time on appeal); Duvall v. State, 59 S.W.3d
773, 777 (Tex. App.--Austin 2001, pet. ref'd) (same). 

 In this case, we find it also appropriate, in the interest of justice, to apply the
unassigned error concept. Here, there was no motion to quash the indictment, no
objection to the charge at trial, and no contention raised on appeal. But, because there are
no "facts" involved in the analysis, we find no application of the Hailey remonstrance
against reversal in the absence of timely objection and opportunity to create a "complete
factual record." This aspect of the case is a simple matter of law, and of the most basic
sort--was the conduct alleged a criminal offense?

 Conduct does not constitute an offense unless it is defined as an offense by statute,
municipal ordinance, order of a county commissioner's court, or a rule authorized by and
lawfully adopted under a statute. Tex. Penal Code Ann. § 1.03(a) (Vernon 2003). Unless
the conduct of the accused has been made a penal offense by statute, such person cannot
be legally convicted. See Banti v. State, 163 Tex. Crim. 89, 289 S.W.2d 244, 247 (1956). 
A Texas conviction can never rest on conduct which is not a criminal offense by law. 
Lawton v. State, 913 S.W.2d 542, 551 (Tex. Crim. App. 1995); see also Murray v. State, 
2 S.W. 757, 759 (Tex. Ct. App.1886); Cain v. State, 20 Tex. 355 (1857). "Simply put, to
convict someone of a crime on the basis of conduct that does not constitute the crime
offends the basic notion of justice and fair play embodied in the United States
Constitution." United States v. Briggs, 939 F.2d 222, 228 (5th Cir.1991); Chafin, 95
S.W.3d at 554; see also United States v. Daniels, 12 F.Supp.2d 568, 573 (N.D. Tex. 1998).

 We acknowledge that the State is allowed to plead all alternative theories of the
offense, which the evidence may ultimately prove; that is, it is allowed to anticipate
variances in the proof by pleading alternative "manner and means" in the conjunctive when
proof of any one theory of the offense will support a guilty verdict. Lawton, 913 S.W.2d at
551. We are fully aware that, when the State pleads alternate theories of the same
offense, it is not required to prove guilt under all the theories alleged; proof of guilt under
one theory of the offense will suffice for conviction. Id.

 The difference presented by this case is quite simple. If considered as alternative
"manner and means" of committing the offense, fully half of those alternatives are not
offenses at all. This presents a situation that has ramifications far beyond the typical
possibility that a person was convicted of committing an offense one way instead of
another way. 

 Under these facts, we conclude we must consider the unassigned error. (4) Under
these particular facts, where the error is in the very nature of the allegations and as
ultimately sent to the jury, and as presented and argued by the State at trial, we see no
useful purpose in requiring either the State or Hammock to provide additional briefing on
the matter. This is a matter set out explicitly in a cold record, and is not now subject to
correction or any explanation that could conceivably cure the error shown. Its harmful
effect on Hammock is apparent--the court's charge authorized the jury to convict him for
conduct not defined as a criminal offense. This error is dispositive, and we need not
address the points of error alleged in Hammock's brief.

 We reverse the judgment and remand the case for a new trial.



 Donald R. Ross

 Justice


Date Submitted: August 26, 2006

Date Decided: December 14, 2006

1. Act of May 9, 2003, 78th Leg., R.S., ch. 570, § 2, 2003 Tex. Gen. Laws 1931,
amended by Act of May 27, 2005, 79th Leg., R.S., ch. 282, § 6, 2005 Tex. Gen. Laws 841,
855 (current version at Tex. Health & Safety Code Ann. § 481.124 (Vernon Supp. 2006)).
2. We also note that none of those six items are "immediate precursors" under the
current version of the list. 37 Tex. Admin. Code 13.116 (2006).
3. See Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); Perry v. State,
703 S.W.2d 668, 670 (Tex. Crim. App. 1986).
4. See Tex. R. App. P. 2, 38.1(e), 38.9.