NO. 07-10-0147-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 26, 2011

_____

ENRIQUE JARAMILLO PEREZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 54TH DISTRICT COURT OF McLENNAN COUNTY;

NO. 2009-483-C2; HONORABLE MATT JOHNSON, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Enrique Jaramillo Perez, was convicted following a jury trial of one count of aggravated sexual assault of a child[1] and three counts of indecency with a child.[2] At the punishment phase of his trial, the jury found two enhancement allegations to be true and assessed his sentence at life imprisonment on each count. The trial

---

[1]*See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West 2011).

[2]*See* Tex. Penal Code Ann. § 21.11(a) (West 2011).

court ordered Count I to run concurrently with any other sentence, Count II to run consecutive to Count I, Count III to run consecutive to Count II, and Count IV to run consecutive to Count III. In three points of error, Appellant asserts the trial court erred by (1) admitting evidence of an extraneous offense to rebut the defense of fabrication, (2) admitting evidence of an extraneous offense when the probative value of the evidence was substantially outweighed by its prejudicial effect, and (3) admitting hearsay testimony by two witnesses regarding statements made by the victim. Subject to a modification of the judgment in Count I pertaining to the assessment of costs of court, discussed hereinbelow, we affirm.

**Background**

On April 8, 2009, a McLennan County Grand Jury returned a four count indictment alleging that (1) on or about February 2, 2009, Appellant knowingly caused the penetration of the sexual organ of D.P. (his granddaughter) with his finger when D.P. was younger than seventeen years old and not his spouse; (2) on or about February, 2, 2009, Appellant, with the intent to arouse or gratify his sexual desire, intentionally and knowingly engaged in sexual contact with D.P. by touching her breast when D.P. was younger than fourteen years old and not his spouse; (3) on or about August 10, 2008, Appellant, with the intent to arouse or gratify his sexual desire, intentionally and knowingly engaged in sexual contact with D.P. by touching her breast when D.P. was younger than fourteen years old and not his spouse; and (4) on or about August 20, 2008, Appellant with the intent to arouse or gratify his sexual desire,

2

intentionally and knowingly engaged in sexual contact with D.P. by touching her breast when D.P. was younger than fourteen years old and not his spouse.[3]

In March 2010, a two-day jury trial was held. The State's first witness was Peggy Sheppard, a Sexual Assault Nurse Examiner who examined D.P. on February 2, 2009. Sheppard testified that D.P. told her that her grandfather, Appellant, had been touching her in a sexual way for a year. She testified D.P. told her that, on February 2, 2009, Appellant picked her up from school and drove her to Walmart where he rubbed her vagina and touched her breasts. On cross-examination, Appellant's counsel inquired whether D.P. was mad at her grandfather and Sheppard testified that D.P. told her that she "got mad at grandpa Monday."[4]

D.P. testified that she was fourteen years old at the time of trial. Her mother was Marizela Welsch and her grandfather was Appellant. She testified that, when she was in the fifth grade, her grandfather took care of her and her brother and sisters. She didn't like living at his house because he touched her in her bedroom more than once but less than five times. She testified he would wake her up at night when she was sleeping and touch her breast and vagina. She would tell him to leave her alone but he would continue touching her underneath her clothes. He tried to give her money to let him touch her, but she refused. She once woke up to find Appellant on top of her and

---

[3]The State subsequently sought to increase the punishment range for the indicted offenses to that of a habitual felon by giving notice of three prior felony convictions -- two prior felony convictions for DWI offenses in 2002 and a felony conviction for unlawfully carrying a weapon on licensed premises in 1982.

[4]Dr. Ann Sims, a medical director for the Children's Advocacy Center, testified that D.P.'s physical examination was consistent with her history. Blake Goertz, DPS Crime Lab -- DNA Section Supervisor, testified that DNA samples taken from D.P. during the SANE examination did not show any foreign DNA.

told him to get off her. He ignored her, unzipped his pants, and tried to take her pants off while attempting to penetrate her with his penis. When her panties were off, his attempts hurt her. Ultimately, she was able to push him off.

D.P. also testified that, after she moved to another house, Appellant picked her up after school and took her to Walmart. While they were in his car, Appellant rubbed her vagina under her clothes with his finger. She became angry and told him to stop but he continued rubbing. He threatened to hit her if she didn't allow him to continue. He also touched and squeezed her breast underneath her clothes. Afterwards, he took her to a sporting goods store, bought her some athletic shoes and told her he had bought her something so he could touch her again. She was sad, afraid and scared. When he took her to a cemetery to teach her to drive, he touched her on the upper thigh of her leg while someone else was in the car. She testified that the first adults she told about the sexual abuse were her mother and Shaundale Garcia. Afterwards, her mother called the police and, after the police arrived, they took her to the hospital.

On cross-examination, Appellant's counsel asked D.P. whether it was "possible Appellant was trying to wake you up or that you were dreaming?" He also asked the following questions, in pertinent part:

Q: Okay. Do you recall giving a statement to Ms. Clark, a detective?

A. Yes.

Q. Did you tell Ms. Clark that you told your mom lots of times and nothing happened?

A. Yes, but --

4

Q. Why would you tell Ms. Clark something that wasn't the truth?

A. I don't know really.

* * *

Q. Okay. And you're telling us today that when you spoke to Ms. Clark that you lied to her; is that correct?

A. Yes.

Q. Okay. And you can tell us why you would lie to somebody, a police detective?

A. Because I really didn't want to tell her.

* * *

A. I didn't want to tell her all the details.

* * *

Q. . . . But you were out late one night, correct?

A. Yes.

Q. And when you went home that's when your mother was having a talk with you and that's when you brought this up about your grandfather doing these things?

A. Yes.

Q. Okay. Did you make these things up about your grandfather so you wouldn't get in trouble?

A. No. They asked me about it. I didn't just tell them.

Q. Okay. When you say "they asked me," who?

A. [Shaundale Garcia] and my mom.

Marizela Welch then testified that, on February 7, 2009 in the early morning hours, she and Garcia were concerned that D.P. might be staying out late with boys and had a conversation with D.P. about good and bad touching. During the conversation,

5

D.P. told them that someone had been touching her in a way that they shouldn't. When they asked who was touching her, D.P. identified her grandfather.[5] After their conversation, Welch immediately called the police. The police arrived and spoke first to Welch and then to D.P. The officers next took D.P. to the hospital where she was examined by Sheppard.

Welch also testified that she and her children lived with her father in 2007 and 2008 while she was having financial difficulties. When she worked nights, her father stayed with the children. She later moved out to live with her grandmother in 2008. She also testified that, on February 2, 2009, D.P. went with her father to Walmart.

Officer Brad Skaggs testified that on February, 7, 2009, he responded to a complaint regarding an aggravated sexual assault at Welch's residence. When he spoke to D.P., she was twelve years old and it was difficult for her to talk about the incident. She was upset and withdrawn. During the State's direct examination, Skaggs testified that D.P. identified her grandfather as the person who sexually abused her.[6]

Martha Perez (Perez), Appellant's daughter, testified that she had lived with her father until she was ten years old. She testified that, when she was inside her bedroom

---

[5]Appellant's counsel objected to Welch's testimony as to what D.P. said on the basis of hearsay. The State asserted the statement was not hearsay because it was a statement of identification and the trial court overruled the objection.

[6]Appellant's counsel lodged a hearsay objection to this testimony. Again, the State asserted the statement was not hearsay because it was a statement of identification and the trial court overruled the objection.

asleep, Appellant would come in and touch her body on her breast and vagina.[7] She also testified that he would drive her out to the country and touch her breast and vagina there also. Although she reported the incidents to the police when she was fourteen years old, she did not hear back from them. The State then rested. Appellant called one witness -- D.P. and then rested.

Following closing arguments, the jury convicted Appellant on all four counts in the indictment and assessed his sentence. Thereafter, the trial court issued four judgments, one for each count in the indictment. In its judgment on Count I of the indictment, the trial court ordered Appellant pay $8,655.00 in court costs, including $4,615.00 in court-appointed attorney's fees, $1,590.00 in court-appointed investigator fees, and $2,010.00 in court-appointed interpreter fees. This appeal followed.

## Discussion

Appellant asserts that the trial court erred by permitting the State to introduce the testimony of Appellant's daughter, Martha Perez, regarding a sexual assault by Appellant that occurred years earlier. He next asserts that the probative value of Perez's testimony was exceeded by its prejudicial effect. Lastly, Appellant contends that the trial court erred by admitting hearsay testimony by Welch and Officer Skaggs that D.P. had identified Appellant as the person who sexually abused her.

---

[7]Prior to her testimony, the State alerted the trial court that she would be testifying and the substance of her testimony. Appellant's counsel objected that he had not opened the door to such testimony and the incidents were fifteen to sixteen years ago. The trial court overruled the objection based upon the State's arguments that the evidence was intended to rebut the defense theory of fabrication.

7

In response, the State contends that Perez's testimony was admissible because Appellant had asserted the defense of fabrication and Appellant did not object to Perez's testimony at trial on the basis of the probative value of the testimony being outweighed by its prejudicial effect. As to the alleged error in admitting hearsay testimony, although the State admits that the hearsay exception it argued at trial was invalid, it asserts that Welch's hearsay testimony was admissible as part of D.P.'s outcry.

## Standard of Review

Because the trial courts are in the best position to decide substantive admissibility questions, we review a trial court's ruling on admissibility under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001). Under this standard, an appellate court should not reverse a trial court whose ruling was within the zone of reasonable disagreement. *State v. Mechler*, 153 S.W.3d 435 (Tex.Crim.App. 2005).

Further, error in the admission of evidence is non-constitutional error and is therefore subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Potier v. State*, 68 S.W.3d 657, 666 (Tex.Crim.App. 2002); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). To obtain a reversal of a conviction based on error in the admission of evidence, an appellant must establish that the trial court's ruling was outside the zone of reasonable disagreement and that the error

8

affected his or her substantial rights.[8]  Tex. R. App. 44.2(b); *Potier*, 68 S.W.3d at 666. In considering harm, we view the entire record to determine whether the error had more than a slight influence on the verdict.  *Potter v. State*, 74 S.W.3d 105, 113 (Tex.App.--Waco 2002, no pet.).

### Issue One -- Rule 404(b)

Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith"; however, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity.  Tex. R. Evid. 404(b). "This list is illustrative, not exhaustive."  *Berry v. State*, 233 S.W.3d 847, 858 (Tex. Crim.App. 2007).

Rebuttal of a defensive theory is also one of the permissible purposes for which evidence may be admitted under Rule 404(b).  *Williams v. State*, 301 S.W.3d 675, 687 (Tex.Crim.App. 2009), *cert. denied*, ___ U.S. ___, 130 S.Ct. 3411, 177 L.Ed.2d 326 (2010).  Thus, whether Perez's testimony that Appellant had sexually assaulted her was admissible turns on "whether the extraneous-offense evidence has noncharacter-conformity relevance by, for example, rebutting a defensive theory or making less probable defensive evidence that undermines an elemental fact."  *Bass v. State*, 270 S.W.3d 557, 563 n.8 (Tex.Crim.App. 2008).  Specifically, such evidence may be

---

[8]"A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."  *Potter v. State,* 74 S.W.3d 105, 113 (Tex.App.--Waco 2002, no pet.) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997)).

9

admissible when it is introduced to rebut the defensive theories of fabrication and retaliation. *Id.*

Appellant asserts Perez's testimony was unnecessary because he did not assert the defense of fabrication but merely sought to establish that D.P.'s statements were inconsistent. During trial, however, Appellant attempted to establish that D.P. fabricated her allegations because she was mad at Appellant or to avoid being punished for having stayed out past her curfew. As a result, Appellant did more than merely impeach D.P.'s credibility. Through the responses elicited from D.P., as well as other witnesses, Appellant opened the door to extraneous-offense evidence to rebut the defensive theories of fabrication and retaliation.

Having reviewed the entire record, whether or not Perez's testimony is admissible for the noncharacter-conformity purpose of rebutting Appellant's defensive theories of fabrication and retaliation is at least within the zone of reasonable disagreement. *See Dennis v. State*, 178 S.W.3d 172, 177-78 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd). Appellant's first issue is overruled.

**Issue Two -- Unfairly Prejudicial**

Once a trial court rules that uncharged misconduct evidence is not barred under Rule 404(b), the opponent of the evidence may nevertheless object under Rule 403.[9] *Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007). To preserve a complaint

---

[9]Rule 403 of the Texas Rules of Evidence provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.

for our review, Appellant must have presented to the trial court a timely request, objection, or motion that stated a specific Rule 403 objection. Tex. R. App. P. 33.1(a). *See Wenger v. State*, 292 S.W.3d 191, 202 (Tex.App.--Fort Worth 2009, no pet.) (citing *Mosley v. State*, 983 S.W.2d 249, 265 (Tex.Crim.App. 1998) (op. on reh'g)). At trial, Appellant objected to the admissibility of Perez's testimony stating only that he did not open the door to her testimony. He made no objection based on Rule 403, and he did not assert that the testimony was unduly prejudicial.[10] Therefore, Appellant preserved nothing for our review. *Id*. Appellant's second issue is overruled.

### Issue Three -- Hearsay Testimony

At trial, Appellant objected to testimony by Welch and Officer Skaggs, regarding statements by D.P. that Appellant had sexually abused her, as being hearsay. In both instances, the State asserted the testimony was not hearsay but statements of identification[11] and the trial court overruled Appellant's objections. In its brief, the State concedes that Rule 801(e)(1)(C) is not a legitimate basis upon which the trial court could admit those statements; however, it asserts that Welch's testimony is

---

[10]To the extent Appellant asserts that Perez's testimony was unduly prejudicial because the sexual assault occurred twenty-four years earlier, we believe the decision as to whether or not the probative value of that testimony was outweighed by its prejudicial effect was within the zone of reasonable disagreement. *See Newton v. State*, 301 S.W.3d 315, 318 (Tex.App.--Waco 2009, pet. ref'd) (sexual assault of stepdaughter by stepfather that occurred twenty-five years before the offense charged not too remote in time under Rule 404(b)).

[11]A statement that is "one of identification of a person made after perceiving the person" is not considered hearsay. Tex. R. Evid. 801(e)(1)(C).

nevertheless admissible under article 38.72 of the Code of Criminal Procedure as an outcry by a victim of child abuse.[12]

Although the trial court's basis for admitting Welch's testimony may have been erroneous, we must sustain the trial court's ruling if it can be sustained on any theory of law applicable to this case. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990); *Blackwell v. State*, 193 S.W.3d 1, 9 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).[13] Here, Welch's testimony was admissible as an outcry statement because the evidence reflects she was the first person to whom D.P. described sexual abuse by her grandfather.[14]

Assuming without deciding that the trial court's ruling as to Officer Skaggs's testimony was erroneous, we must determine whether his testimony affected Appellant's substantial rights. *See Couchman v. State*, 3 S.W.3d 155, 160 (Tex.App.-- Fort Worth 1999, pet. ref'd). Here, Sheppard and Welch had previously testified to the same matter as Officer Skaggs, i.e., D.P. told them that Appellant was the person who

---

[12]Article 38.72 of the Code of Criminal Procedure permits outcry statements by victims of child abuse to be admitted during trial, despite the hearsay rule, if the statement was made by the child against whom the offense was allegedly committed and the statement was made to the *first* person to whom the child made the statement about the offense. See Tex. Code Crim. Proc. Ann. art. 38.072 § 1 (1), § 2 (1) & (2) (West 2005).

[13]"Usually, when evidence is admitted for the wrong reason, but it is admissible for another reason, appellate courts do not find reversible error." *Deleon v. State*, 126 S.W.3d 210, 214 n.3 (Tex.App.-- Houston [1st Dist.] 2003, pet. ref'd).

[14]To qualify as proper outcry statements, the child must have described the alleged offense in some discernible way and must have more than generally insinuated that sexual abuse occurred. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App. 1990). *See Sims v. State*, 12 S.W.3d 499, 500 (Tex.App.–Dallas 1999, pet. ref'd); *Hayden v. State*, 928 S.W.2d 229, 231 (Tex.App.–Houston [14th Dist.] 1996, pet. ref'd).

sexually abused her. D.P. also identified Appellant as the person who sexually assaulted her. Therefore, Officer Skaggs's statement is merely cumulative of properly admitted testimony on the same issue.

Moreover, after Officer Skaggs testified to D.P.'s hearsay statement, D.P. testified in Appellant's case-in-chief where she was under oath and subject to cross-examination. Furthermore, the jury had the opportunity to observe her demeanor and to judge her credibility. Thus, even if the trial court erred in allowing Officer Skaggs to testify about D.P.'s out-of-court statement, we must disregard the error because it could not have affected Appellant's substantial rights. *See Matz v. State*, 21 S.W.3d 911, 912 (Tex.App.--Fort Worth 2000, pet. ref'd) (no reversible error where videotape essentially repeated the victim's testimony); *Couchman*, 3 S.W.3d at 161 (no reversible error where subsequent hearsay statement had already been admitted on the same issue by a prior witness); *Thompson v. State*, 665 S.W.2d 188, 190 (Tex.App.--Houston [1st Dist.] 1984, pet. ref'd) (no reversible error where complainant who made out-of-court statement was in court, testified on direct and cross-examination, and was available for future examination). *See also* Tex. R. App. P. 44.2(b). Appellant's third issue is overruled.

### Court-Appointed Attorney's Fees and Investigative Expenses

We also note an issue not raised by Appellant regarding the assessment of attorney's fees, investigative expenses, and interpreter fees.[15] The written judgment as

---

[15]Courts of appeals may review unassigned error in criminal cases, particularly where the record discloses error that should be addressed in the interest of justice. *Hammock v. State*, 211 S.W.3d 874, 878 (Tex.App.--Texarkana 2006, no pet.). Where, as here, the error appears on the face of the judgment and does not involve the merits of the criminal trial, but instead solely addresses the clerical correctness of the judgment, we find that the interest of justice allows that we address the issue.

to Count I reflects the assessment of court-appointed attorney's fees and investigative expenses totaling $6,205.00 as court costs. In order to assess attorney's fees, including investigative expenses, as costs of court, a trial court must determine that the defendant has financial resources that enable him to offset in part or in whole the costs of legal services provided.[16] Here, the clerk's record reflects that the trial court found Appellant indigent and unable to afford the cost of legal representation both before trial in March 2010, and again after trial.[17] Unless a material change in his financial resources occurs, once a criminal defendant has been found to be indigent, he or she is presumed to remain indigent for the remainder of the proceedings. Tex. Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2010). Therefore, because there is evidence of record demonstrating that immediately following the rendition of judgment Appellant was indigent and qualified for court-appointed counsel, we presume that his financial status has not changed and that he is indigent. *Perez v. State*, 323 S.W.3d 298, 307 (Tex.App.--Amarillo 2010, pet. ref'd).

---

[16]Article 26.05 of the Texas Code of Criminal Procedure provides that "counsel in a noncapital case . . . appointed to represent a defendant under this code shall be reimbursed for reasonable and necessary expenses, including expenses for investigation and mental health and other experts." Tex. Code Crim. Proc. Ann. art. 26.05(d) (West Supp. 2010). Article 26.05 further states, in pertinent part, as follows:

> If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of legal services, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds defendant is able to pay.

Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2010).

[17]Appellant has been represented by court-appointed counsel throughout the proceedings below and on appeal. In addition, when the trial court approved an authorization to expend additional funds for an investigator and also appointed counsel for appeal in March 2010, the trial court found Appellant indigent. Further, in each notice of withdrawal of money from Appellant's inmate account incorporated into each of the four judgments for each count of the indictment for which Appellant was convicted; *see Randolph v. State*, 323 S.W.3d 585, 587 (Tex.App.--Waco 2010, no pet.), the trial court found "that Defendant is unable to pay the costs [$8,655.00] and that the funds should be withdrawn from the inmate account."

14

Furthermore, prior to requiring a defendant to offset any of the costs of his legal services and expenses, the record must reflect some factual basis to support the determination that the defendant is capable of paying attorney's fees. *Id.; Barrera v. State*, 291 S.W.3d 515, 518 (Tex.App.--Amarillo 2009, no pet.); *Perez v. State*, 280 S.W.3d 886, 887 (Tex.App.--Amarillo 2009, no pet.).

We note that the record in this case does not contain a pronouncement, determination, or finding that Appellant had financial resources that enable him to pay all or any part of the fees or expenses paid his court-appointed counsel, and we are unable to find any evidence to support such a determination. Therefore, we conclude that the order to pay attorney's fees and investigator expenses as court costs and notice of withdrawal of money from Appellant's inmate account were improper. *See Mayer v. State*, 309 S.W.3d 552, 555-56 (Tex.Crim.App. 2010). No trial objection is required to challenge the sufficiency of the evidence regarding the defendant's ability to pay. *Id.*

When the evidence does not support an order to pay court-appointed attorney's fees and expenses, the proper remedy is to correct the order. *Id.* at 557; *see Watkins v. State,* 333 S.W.3d 771, 781-82 (Tex.App.--Waco 2010, pet. ref'd); *Perez,* 323 S.W.3d at 307. Accordingly, we conclude that the judgment as to Count I should not have assessed the sum of $6,205.00 in court-appointed attorney's fees and investigator expenses as costs of court.

**Court-Appointed Interpreter Expenses**

The trial court's judgment also assesses, as costs of court, the sum of $2,010.00 for the services of a court-appointed interpreter. While an accused is entitled to the

appointment of an interpreter if it is determined that he or a witness does not understand the English language, and while the interpreter is entitled to be compensated for his or her services, nothing in article 38.30 of the Texas Code of Criminal Procedure authorizes a trial court to assess the cost of that interpreter against the accused. Furthermore, the miscellaneous provisions of Chapter 102 of the Texas Code of Criminal Procedure, pertaining to costs to be paid by defendants, do not authorize the assessment of such expenses. Finding no statutory authority for the assessment, we conclude that the sum of $2,010.00 in court-appointed interpreter's fees should not have been assessed as costs of court.

## Conclusion

The judgment as to Count I is corrected to reflect court costs of $450.00 and, as corrected, that judgment is affirmed. The judgments as to Counts II, III, and IV are affirmed.

Patrick A. Pirtle
Justice

Do not publish.