NO. 07-08-0425-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 8, 2010

_____

ALFREDO PEREZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-417,321; HONORABLE JIM B. DARNELL, JUDGE

_____

Before QUINN, C.J. and CAMPBELL and PIRTLE, JJ.

**OPINION**

Following an open plea of guilty to the offense of murder,[1] Appellant, Alfredo Perez, was adjudicated guilty as charged. The trial court then proceeded to a punishment hearing where Appellant offered evidence of sudden passion. Normally,

---

[1]Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003).

murder is a first degree felony punishable by confinement for life or for any term of not more than 99 years or less than 5 years. Tex. Penal Code Ann. §§ 19.02(c) and 12.32(a) (Vernon 2003 and Vernon Supp. 2009). If, however, at the punishment stage of a trial, the defendant proves in the affirmative by a preponderance of the evidence that he caused the death under the immediate influence of sudden passion arising from an adequate cause, then the offense is a felony of the second degree punishable by confinement for a term of not more than 20 years or less than 2 years.[2] Texas Penal Code Ann. §§ 19.02(d) and 12.33(a) (Vernon 2003 and Vernon Supp. 2009). *See Sanchez v. State,* 23 S.W.3d 30, 34 (Tex.Crim.App. 2000). At the conclusion of the punishment hearing, the court assessed Appellant's sentence at confinement for life. In two issues, Appellant contends the trial court's negative finding on his issue of sudden passion is legally and factually insufficient. We affirm.

## Background

On August 4, 2007, the Lubbock County Grand Jury returned an indictment charging Appellant with intentionally and knowingly causing the death of Javier Castaneda with a firearm on July 25, 2007. On October 13, 2008, Appellant pled guilty to the charge without an agreed recommendation as to punishment.

During the punishment phase of the case, Danielle Galindo, Appellant's girlfriend, testified that, on July 25, 2007, she and Appellant were riding in his car when they

---

[2]Before September 1, 1994, the existence of sudden passion was an element of the offense of voluntary manslaughter (a lesser-included offense of murder), to be determined by the jury at the guilt/innocence stage. *See Bradley v. State,* 688 S.W.2d 847, 849 (Tex.Crim.App. 1985). Effective September 1, 1994, the existence of sudden passion became a punishment stage issue.

encountered a group of people walking on 39th Street in Lubbock, Texas. Someone in the group threw a brick at them and started shooting. Appellant drove her back to his house arriving about 5:00 p.m. He went to his bedroom and retrieved a gun saying he was going to pick up his little brother, Vincent Sandoval, because he had seen him walking in the area near to where the altercation had occurred. She testified "he was really mad when he left," but he promised he would "come right back." She testified that when Appellant returned around 6:00 p.m., he was "shocked, mad or something" and he told her "somebody got shot."

Julian Castaneda, Javier's brother, next testified that on July 25, 2007, he and a group of friends, Jose Castaneda (known as "PePe"), Javier Castaneda, Jesse Alvaredo, Alfred Luis Molina (known as "LuLu"), and Michael Moreno, were walking down 43rd Street when Appellant drove by in his car and said "Y'all keep walking up and down like that, we got something for y'all." He and Appellant exchanged a few words and Appellant drove away. Subsequently, the group was walking on 39th Street when two cars approached. Appellant and Vincent were in one car and two other persons were in the other car. After the occupants emptied out of the cars, a nearby neighbor told everyone to leave. At this point, LuLu threw a brick at Appellant's car and broke out a window. Thereafter, the cars left and the group continued walking down the street.

Later, as the group entered the parking lot of a nearby elementary school, they saw Appellant's car pull up to a stop sign approximately 20 to 30 yards away and sit for

3

approximately five seconds. Feeling safe because the car was on the other side of the street, Julian threw up his hands. Appellant and Vincent then got out of the car. Julian approached with an unidentified member of the group taking perhaps five steps when Appellant and Vincent started shooting. The group turned and ran. Julian heard Javier say, "I'm hit." He grabbed Javier and took him around the corner of the school building. Javier later died of a gunshot wound to the stomach. Julian testified that, although he and Appellant had problems in the past, Javier had nothing to do with any conflict between them. According to his testimony, on that day Javier was "just hanging out."

Jose Castaneda testified next and corroborated Julian's account of the events that transpired. He also testified that, prior to the commencement of the shooting near the elementary school no one said anything to anyone. By Jose's account, when Appellant and Vincent got out of the car, they were holding handguns and when they started shooting, everyone ran.

Detective Larry Manale testified he located .22 caliber, long rifle casings on the ground where Appellant had stopped his car near the elementary school. He also testified there was a bullet hole in Appellant's car. Although the bullet hole appeared recent, he could not say when it was made. A bullet was found inside the door panel, but they could not identify the caliber. When asked how long it would take to drive from Appellant's house to the location of the shooting, Detective Manale testified he had driven the route at a normal speed in a minimum of ten minutes.

4

Angelica Reyna testified she saw two cars pull up on 39th Street across from a group of kids. She recognized LuLu, who was a friend of her husband's. She didn't see any weapons but told her husband to go outside thinking there was going to be a fight. She testified that the persons in the two cars got out and when her husband came outside and told them to leave, LuLu broke windows in both cars with bricks. At that point the two cars drove away. With the exception of the bricks thrown by LuLu, no one appeared to have any weapons. After that, the group started walking away and about ten minutes later, she heard gunshots.

Detective Jeremy Jones testified the murder weapon was never located. At 41st Street and Avenue D, where witnesses placed Appellant and Vincent at the time of the shooting, he found shell casings for a .22 long rifle. Witnesses also placed an orange-tipped pistol in Vincent's hands and he located an orange-tipped, plastic toy pistol in a dumpster not far from where the shooting occurred. During his investigation, Jones encountered several inconsistencies in different witness statements. Some witnesses said members of the group were carrying a bat and two-by-four, others said they were not. Other witnesses said they saw at least three members of the group chasing Appellant's car near the elementary school, others did not.

After the State rested, Appellant testified. According to his version of the events, he and his girlfriend were driving around Lubbock when they encountered a group of persons walking. A brick was thrown through his car window and he heard gunshots. He panicked and drove off fast--scared. He recognized Julian Castaneda as a member

5

of the group, and LuLu as the person who had thrown the brick. Later, he found a bullet hole in the side of his car. As he drove home, he noticed Vincent walking. When he arrived at his house, he ran to his room and grabbed his gun, a .22 caliber rifle, and told Danielle that he was going back to get Vincent.

After he picked up Vincent, Appellant testified Vincent wanted to go to his dad's house. On the way there, he stopped at a stop sign near an elementary school and noticed the same crowd that had earlier thrown the brick at his car. He turned the corner to avoid a confrontation but noticed the crowd running toward his car. He stopped to avoid another car backing out of a driveway and observed that the crowd was gaining on him. He jumped out of his car, armed himself with his rifle, and fired shots into the air. He then jumped back into his car and drove away. He testified he did not know that he had shot anyone until Vincent told him, "I think one of them got hit." He later wrapped the gun in a black shirt and threw it into a dumpster before taking off for Dunbar Lake. He stayed at the lake all night because "he was on the run."

Appellant further testified that, after the initial encounter, he was upset. He described his mood at the house when he picked up his gun and at the school when he fired the warning shots as mad, panicking, and scared. He testified that, when he fired his rifle, he did not know that Javier was in the group. The only person he recognized was Julian and he admitted "[t]here had been bad blood between him and Julian Castaneda." He testified that in 2006 he had gotten in a fight with Julian's cousins. Before that, when he was seventeen, he was jumped by some people who called

6

themselves the "Texas Head Busters" and was hit twice in the face with a two-by-four. He attributed the beating to associates of Julian. When he was eighteen, he was shot in the stomach by Julian's friend, Jeremy Paiz.

Detective Rene Martinez was then called as a rebuttal witness for the State. He testified he investigated a shooting that occurred January 19, 2007. At the conclusion of his investigation, he determined that Kevin Corales, Jeremy Paiz, and Steven Lee Perez had been involved in shooting Appellant. Information he gathered during the investigation led him to believe the shooting had to do with a "drug deal or drug deal rip-off."[3]

After the punishment hearing, the trial court issued its judgment sentencing Appellant to confinement for life. This appeal followed.

## Discussion

Appellant contends the trial court's negative finding on the issue of whether he acted under the influence of sudden passion arising from adequate cause was so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant asserts that the group running towards his car with long objects combined with the earlier incident where a brick was thrown at his car and he was fired upon represented sufficient provocation to produce a degree of terror that rendered him incapable of cool reflection.

---

[3]In the State's case-in-chief, Davela Maynard, a Department of Public Safety Trooper, testified that, on June 30, 2007, Appellant had been arrested for possession of marijuana. After Trooper Maynard pulled Appellant over for a seat belt violation, Appellant attempted to flee the scene. After detaining Appellant, the trooper detected the smell of burnt marijuana and located marijuana in Appellant's possession.

## I.   Issue No. 1 -- Legal Sufficiency

### A.  Standard of Review

An appellate court may review the legal sufficiency of the evidence to support a fact finder's rejection of an issue on which the defendant bore the burden of proof, i.e., affirmative defenses and the issue of sudden passion. *See Clark v. State*, 190 S.W.3d 59, 62 (Tex.App.--Amarillo 2005, no pet.); *Cleveland v. State*, 177 S.W.3d 374, 388 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) (en banc), *cert. denied*, 547 U.S. 1073, 126 S.Ct. 1774, 164 L.Ed.2d 523 (2006); *Ballard v. State*, 161 S.W.3d 269, 272 (Tex.App.--Texarkana 2005), *aff'd*, 193 S.W.3d 916 (Tex.Crim.App. 2006).

When conducting a legal sufficiency review of the evidence related to an issue on which the defendant bore the burden of proof, an appellate court reviews the evidence in a light most favorable to the verdict and reverses only when the evidence conclusively establishes the opposite. *See Wheat v. State,* 165 S.W.3d 802, 806 n. 6 (Tex.App.--Texarkana 2005, pet. dism'd, untimely filed); *Howard v. State*, 145 S.W.3d 327, 331 (Tex.App.--Fort Worth 2004, no pet.). An appellate court reviews the legal sufficiency of such evidence under a two-part test. *See Clark,* 190 S.W.3d at 62; *Cleveland*, 177 S.W.3d at 388; *Howard*, 145 S.W.3d at 334. First, the appellate court examines the record for evidence that supports the verdict (i.e., the negative finding) while ignoring evidence to the contrary; *see Clark*, 190 S.W.3d at 62; *Cleveland*, 177 S.W.3d at 388; *Howard*, 145 S.W.3d at 334, and, if there is no evidence to support the verdict, the court then examines whether the record supports the defendant's affirmative

defense or issue as a matter of law.  *See Clark*, 190 S.W.3d at 334; *Nolan v. State*, 102 S.W.3d 231, 238 (Tex.App.--Houston [14th Dist.] 2003, pet. ref'd).  If the record reveals evidence of the defendant's affirmative defense or issue that was not subject to a credibility assessment, the evidence shows as a matter of law that the defendant proved his affirmative defense or issue.  *See Cleveland*, 177 S.W.3d at 388-89.  However, if the evidence supporting the defendant's affirmative defense or issue was subject to the fact finder's assessment of credibility, that evidence is not considered in the appellate court's matter-of-law assessment.  *See Cleveland*, 177 S.W.3d at 389.

### B.  Analysis

The core concept of "sudden passion" is that at the moment of the killing the actor's mental state rendered him incapable of rational thought and collected action. *See Swearingen v. State*, 270 S.W.3d 804, 820 (Tex.App.--Austin 2008, pet. ref'd). "Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation."  Tex. Penal Code Ann. § 19.02(a)(2) (Vernon 2003).  "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* at (a)(1).  Merely acting in response to provocation by another is not enough to raise the issue; *see Trevino v. State*, 100 S.W.3d 232, 241 (Tex.Crim.App. 2003), and the provocation must arise at

the time of the offense. *See* Tex. Penal Code Ann. § 19.02(a)(1) (Vernon 2003)*; Nance v. State*, 807 S.W.2d 855, 861 (Tex.App.--Corpus Christi 1991, pet ref'd).

Examining the record for evidence that supports the trial court's negative finding on the issue of sudden-passion, while ignoring evidence to the contrary, we find there is some evidence that Appellant did not kill Javier out of sudden passion arising from adequate cause. Based upon the testimony of Julian and Jose, the trial court could have reasonably found that Appellant was the protagonist in a series of unprovoked attacks that ultimately ended in Javier's death. According to the testimony of other witnesses, Appellant first threatened the group while driving by in his car as the group was walking down 43rd Street. Then, he and Vincent, along with two others in a second car, confronted the group on 39th Street leading to an altercation where LuLu threw a brick through Appellant's car window. Appellant then confronted the group a third time near the elementary school where he got out of his car and, standing twenty to twenty-five yards away from the group, opened fire with his rifle. Thus, there is some evidence Appellant forced the third confrontation and initiated an unprovoked attack causing Javier's death.

Having reached the conclusion there is some evidence supporting the trial court's negative finding on the issue of sudden passion, our legal sufficiency inquiry is at an end. *See Howard*, 145 S.W.3d at 333-34. We hold that the evidence concerning the trial court's negative finding on Appellant's sudden passion issue is legally sufficient as a matter of law. Appellant's first issue is overruled.

10

## II. Issue No. 2 -- Factual Sufficiency

### A. Standard of Review

When conducting a factual sufficiency review on an affirmative defense or issue on which the defendant had the burden of proof,[4] an appellate court reviews all of the evidence in a neutral light, but we do not intrude on the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *See Clark*, 190 S.W.3d at 63; *Cleveland*, 177 S.W.3d at 390-91; *Wheat*, 165 S.W.3d at 807 n. 6. When a defendant has asserted such an affirmative defense or issue, an appellate court considers all of the evidence and determines whether the judgment rendered is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Edwards v. State*, 106 S.W.3d 833, 843 (Tex.App.--Dallas 2003, pet. ref'd) (citing *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App. 1996)); *Cleveland*, 177 S.W.3d at 390; *Ballard*, 161 S.W.3d at 271. When an appellate court concludes the contrary evidence is insufficient to support rejection of defendant's affirmative defense or issue, it must clearly state why the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias. *See Meraz*, 785 S.W.2d at 154 n.2; *Howard*, 145 S.W.3d at 335. The fact-finder alone determines the weight to be given contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of the

---

[4]It is well-established that an appellate court may review the factual sufficiency of the evidence to support a negative finding on the sudden passion issue in the punishment stage of trial. *Cleveland*, 177 S.W.3d at 385. *See Meraz v. State*, 785 S.W.2d 146, 154-55 (Tex.Crim.App. 1990).

credibility and demeanor. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex.Crim.App. 1997). As the determiner of the credibility of the witnesses, the fact-finder may choose to believe all, some, or none of the testimony presented. *Id.* at 407 n.5.

## B. Analysis

Appellant's contention that the evidence was factually insufficient to establish a negative finding on his sudden passion issue relies entirely on a finding that Appellant's testimony was credible. He asserts that, at the time of the occurrence, he was merely driving Vincent home, he brought the gun for his own protection, he stopped his car to avoid hitting another car, and, when he saw the group rapidly approaching with long objects, he got out of the car and fired warning shots into the air. Based upon his testimony, Appellant contends he was provoked by the group at a time when he was emotionally charged from the earlier confrontation where a brick was thrown through the window of his car and he was fired upon.

Sudden passion means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises *at the time of the offense and is not solely the result of former provocation*. Tex. Penal Code Ann. § 19.02(a)(2) (Vernon 2003). Here, the only evidence of an identifiable, physical act that threatened Appellant was testimony and physical evidence establishing that his vehicle had been shot at some undetermined time in the past and that LuLu threw a brick into Appellant's car window during a prior confrontation that day. Passion solely the result of former provocation is insufficient.

12

*See McKinney v. State,* 179 S.W.3d 565, 570 (Tex.Crim.App. 2005). When, as here, Appellant was the aggressor, or precipitator of the confrontation, and neither Julian, nor those acting with him, did anything to provoke him at the time of the offense, it cannot be said that Appellant's passion was directly caused by and arose out of adequate provocation at the time of the offense. *See Nance v. State,* 807 S.W.2d 855, 861 (Tex.App.--Corpus Christi 1991, pet. ref'd).

Furthermore, in most cases, the issue of sudden passion is resolved exclusively by the fact-finder's assessment of whether the witness is credible; *Cleveland,* 177 S.W.3d at 391, and the fact-finder may choose to believe all, some, or none of the testimony presented. *Cain*, 958 S.W.2d at 407 n.5. The fact-finder alone determines the weight to be given contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of the credibility and demeanor of the witness. 958 S.W.2d at 408-09. With the exception of testimony that Julian and an unidentified member of the group took steps towards Appellant after Appellant got out of the car at least twenty yards away, there is no evidence of any provocative acts, words, or omissions occurring immediately prior to Appellant shooting Javier. Thus, the trial court was free to disbelieve Appellant's testimony and believe the State's witnesses who testified Appellant engaged in an unprovoked attack resulting in a fatal gunshot wound.

After viewing the evidence in a neutral light, we hold that the trial court's negative answer on the sudden passion issue is not so against the great weight and

preponderance of the evidence as to be manifestly unjust. *See Cleveland*, 177 S.W.3d at 390. Appellant's second issue is overruled.

## III. Attorney's Fees

We also note an issue not raised by Appellant regarding the assessment of attorney's fees.[5] The written judgment in this case reflects the assessment of court-appointed attorney's fees totaling $6,868.00, as costs of court. In order to assess attorney's fees as court costs, a trial court must determine that the defendant has financial resources that enable him to offset in part or in whole the costs of legal services provided. Tex. Crim. Proc. Ann. art. 26.05(g) (Vernon 2009). Here, the clerk's record reflects the trial court found Appellant indigent and unable to afford the cost of legal representation both before trial in August 2007, and again after trial in October 2008. Unless a material change in his financial resources occurs, once a criminal defendant has been found to be indigent, he is presumed to remain indigent for the remainder of the proceedings. Tex. Code Crim. Proc. Ann. art. 26.04(p) (Vernon Supp. 2009). Therefore, because there is evidence of record demonstrating that immediately following rendition of judgment Appellant was indigent and qualified for court-appointed counsel, we presume that his financial status has not changed.

---

[5]Courts of appeals may review unassigned error in criminal cases, particularly where the record discloses error that should be addressed in the interest of justice. *Hammock v. State,* 211 S.W.3d 874, 878 (Tex.App.--Texarkana 2006, no pet.). Where, as here, the error appears on the face of the judgment and does not involve the merits of the criminal trial, but instead solely addresses the clerical correctness of the judgment, we find that the interest of justice allow that we address the issue.

14

Furthermore, the record must reflect some factual basis to support the determination that the defendant is capable of paying attorney's fees. *Barrera v. State,* 291 S.W.3d 515, 518 (Tex.App.--Amarillo 2009, no pet.); *Perez v. State,* 280 S.W.3d 886, 887 (Tex.App.--Amarillo 2009, no pet.).

We note that the record in this case does not contain a pronouncement, determination, or finding that Appellant had financial resources that enable him to pay all or any part of the fees paid his court-appointed counsel, and we are unable to find any evidence to support such a determination. Therefore, we conclude that the order to pay attorney's fees was improper. *See Mayer v. State,* 309 S.W.3d 552, 555-56 (Tex.Crim.App. 2010). No trial objection is required to challenge the sufficiency of the evidence regarding the defendant's ability to pay. *Id.* When the evidence does not support an order to pay attorney's fees, the proper remedy is to delete the order. *Id.* at 557*; see also Anderson v. State,* No. 03-09-00630-CR, 2010 Tex.App. LEXIS 5033, at *9 (Tex.App.--Austin, July 1, 2010, no pet.) (also modifying judgment to delete attorney's fees). Accordingly, we modify the judgment to delete the order to pay attorney's fees.

## Conclusion

Having modified the trial court's judgment to delete the order obligating Appellant to pay $6,868.00 in attorney's fees, the judgment, as modified, is affirmed.

Patrick A. Pirtle
Justice

Publish.

15