

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00385-CR
_____

WILLIAM WALTER YOUNGSTROM, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR 12355; Honorable Ralph H. Walton, Jr., Presiding

June 9, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, William Walter Youngstrom, was convicted by a jury of the offense of delivery of a controlled substance, methamphetamine, in an amount of more than four grams but less than two hundred grams. He was sentenced to twenty-seven years confinement and assessed a $2,500 fine.[1] Appellant was also ordered to pay court

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (WEST 2010). An offense under this section is a first degree felony.

costs of $2,730.35 which includes $2,294.35 in court-appointed attorney's fees. By this appeal, Appellant asserts (1) the trial court erred by denying his motion to suppress text messages obtained by an illegal search of his cellphone and (2) his counsel was ineffective for not objecting earlier and demanding a pretrial hearing on the admissibility of the text messages. We modify the trial court's judgment to delete the enhancement findings as well as the order to pay $2,294.35 in court-appointed attorney's fees and affirm as modified.

## BACKGROUND

In December 2012, an indictment was filed alleging that, on or about September 8, 2012, Appellant intentionally and knowingly delivered four grams or more but less than two hundred grams including any adulterants and dilutants, of a controlled substance, to-wit: methamphetamine, by actually transferring the drug to Ray Miller. The indictment contained four enhancement paragraphs alleging four prior felony convictions, i.e., two for possession of a controlled substance, one for theft and one for evading detention. The indictment also included a second count alleging the offense of possession of a controlled substance of less than one gram including adulterants and dilutants. As to the enhancements, no plea was ever taken, the enhancements were never presented to the jury, and no finding was ever made. As to the second count in the indictment, following the assessment of sentence, it was voluntarily dismissed by the State. Prior to trial, Appellant filed a *Motion to Suppress [his] Written and Oral Statements* made while he was under arrest or following his request for an attorney. There is no evidence or transcription of a pretrial suppression hearing in the record.

2

At trial, Ray Miller, a narcotics investigator for Hood County Sheriff's Office, testified that, in September 2012, he was told by an informant that he could purchase drugs if he called Appellant's telephone number. Miller texted Appellant's number and negotiated the price of a quarter ounce of methamphetamine—$550. Miller also negotiated the transaction and arranged its location at a halfway point between the west side of Fort Worth and Granbury—a Tiger Mart in Cresson. Appellant texted Miller that he would arrive in a black 2010 Ford Taurus.

The transaction occurred as the parties had negotiated in their texts. Miller arrived at the Tiger Mart and awaited the Ford Taurus. The Taurus arrived and pulled in front of Miller's car. Miller walked up to the Taurus and entered through the rear passenger door. Two persons were in the front seat—the driver and Appellant. Appellant identified himself as "Will" and almost in a continual motion, turned around and displayed a baggie containing methamphetamine. Miller handed Appellant $550, and Appellant handed him the baggie. Miller then gave a visual bust signal, officers approached the Taurus, and Appellant was arrested.

After Appellant's arrest, Miller located Appellant's activated cellphone in the front seat of the Taurus. On his way to the station, Miller accessed the cellphone's text messaging system and took pictures of the texting correspondence between himself and Appellant. No passcode or password was necessary. The texts on Appellant's phone were the same as the texts on Miller's phone. Both sets of texts were admitted into evidence. Appellant's attorney asserted the admission of Appellant's text messages was illegal because Miller's search was warrantless. Miller testified it would take approximately an hour and a half to obtain a warrant and he was concerned the

texts would be erased.  The trial court overruled Appellant's objection.  William Watt, a narcotics investigator who assisted Miller, corroborated Miller's testimony.

At the conclusion of the State's case, Appellant re-urged his motion to suppress and was overruled.  The jury found Appellant guilty of the charges in the indictment. The trial court's *Judgment of Conviction by Jury* sentenced Appellant to twenty-seven years confinement, assessed a $2,500 fine and ordered Appellant to pay $2,294.35 in court-appointed attorney's fees as court costs.  This appeal followed.

### ISSUE ONE—MOTION TO SUPPRESS

Assuming, without deciding, the trial court erred in admitting Appellant's text messages, we find beyond a reasonable doubt that any error did not contribute to Appellant's conviction or punishment.  TEX. R. APP. P. 44.2(a).  That is, any error was harmless.

In applying the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction.  *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).  Our analysis does not focus on the propriety of the outcome of the trial; instead, we calculate as much as possible the probable impact on the jury in light of the existence of other evidence.  *Westbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001).  In our analysis, we evaluate the entire record in a neutral, impartial and even-handed manner.  *Clay v. State*, 240 S.W.3d 895, 904 (Tex.

4

Crim. App. 2007) (citing *Neder v. U.S.*, 527 U.S. 1, 15-16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). *See Snowden v. State,* 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

Appellant's text messages aside, other evidence at trial, including Miller's and Watt's testimony, establishes the circumstances leading up to and during Appellant's arrest. Moreover, the text messages on Miller's cellphone are near mirror images of the texts admitted from Appellant's phone. Given the cumulative nature of Appellant's texts and the overwhelming evidence of Appellant's guilt, we cannot say that a juror would put much, if any, weight on Appellant's text messages. *See Snowden,* 353 S.W.3d at 822 (quoting *Delaware v. Van Arsdell,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). *See also Davis v. State,* 203 S.W.3d 845, 849-50 (Tex. Crim. App. 2006); *Renfro v. State*, 958 S.W.2d 880, 889 (Tex. App.—Texarkana 1997, pet. ref'd). Accordingly, it was unlikely the admission of Appellant's text messages greatly affected the jury after Miller testified, and his text messages recounting the negotiations and arrangements undertaken to complete the drug transaction were entered into evidence. We find the admission of Appellant's text messages harmless error, if there was error at all. Appellant's first issue is overruled.

### ISSUE TWO—INEFFECTIVE ASSISTANCE

Appellant asserts his counsel was ineffective because he did not request a pretrial determination whether Appellant's text messages should have been suppressed. During trial, the trial court had the authority to admit or exclude Appellant's text messages. *See Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988) (a trial court may consider a motion to suppress before trial or elect to determine its merits

during trial when the evidence is offered).  Moreover, a defendant's counsel may either file a pretrial motion to suppress evidence or wait until trial on the merits and object when the alleged unlawfully obtained evidence is offered.  *See Johnson v. State,* 743 S.W.2d 307, 309-10 (Tex. App.—San Antonio 1987, pet. ref'd) (citing *Roberts v. State*, 545 S.W.2d 157, 158 (Tex. Crim. App. 1977)).  Accordingly, that Appellant's attorney chose the latter approach does not make his representation ineffective, but even if he were, we find no harm because he objected to the admission of Appellant's text messages when the trial court had authority to exclude the evidence and admonish the jury not to consider it.  Issue two is overruled.

### MODIFICATION OF THE JUDGMENT

In reviewing the record, it has come to this Court's attention that the trial court's written *Judgment* contained in the clerk's record includes clerical errors.  This Court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so.  TEX. R. APP. P. 43.2(b).  *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex.Crim.App. 1993).  Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record.  *Ashberry v. State*, 813 S.W.2d 526, 529 (Tex.App.—Dallas 1991, pet. ref'd).  The power to reform a judgment is "not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court."  *Id.* at 529-30.

1. ENHANCEMENTS—The summary portion of the *Judgment* reflects that Appellant entered a plea of "True" to the first and second enhancement paragraphs of the indictment, while the reporter's record clearly shows no plea was ever entered. Additionally, the *Judgment* reflects a finding of "True" as to both enhancements, when the *Court's Charge on Punishment* clearly shows the issue was never presented to the jury and no such finding was ever made. Thus, we modify the *Judgment* to delete the word "TRUE" from both the plea and findings as to the 1st and 2nd Enhancements.

2. COURT-APPOINTED ATTORNEY'S FEES—Furthermore, the written *Judgment* and *Bill of Costs* reflect an assessment of court-appointed attorney's fees totaling $2,294.35, while the record does not reflect a finding of ability to pay. In order to assess court-appointed attorney's fees as court costs, a trial court must determine the defendant has financial resources sufficient to offset in part, or in whole, the costs of the legal services provided. TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West 2013); *Mayer v. State*, 309 S.W.3d 552, 555-56 (Tex. 2010). Once a defendant has been found indigent, he or she is presumed to remain indigent for the remainder of the proceedings unless a material change in financial resources occurs. TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2013); *Mayer*, 309 S.W.3d at 557. Therefore, because the record demonstrates Appellant was found indigent and qualified for court-appointed counsel, we presume his financial status had not changed, i.e., he was indigent at the time the trial court entered judgment.

Furthermore, the record must reflect some factual basis to support the determination that the defendant is capable of paying court-appointed attorney's fees. *See Perez v. State*, 323 S.W.3d 298, 307 (Tex. App.—Amarillo 2010, pet. ref'd). *See*

7

*also Barrera v. State*, 291 S.W.3d 515, 518 (Tex. App.—Amarillo 2009, no pet.). We note the record does not contain a pronouncement, determination or finding that Appellant had financial resources sufficient for him to pay all, or any part of, the fees paid his court-appointed counsel, and we are unable to find any evidence to support such a determination. Accordingly, we conclude the order to pay attorney's fees was improper because the evidence was legally insufficient to support a finding Appellant had the financial resources to pay attorney's fees. *See Mayer*, 309 S.W.3d at 556-57. Accordingly, we modify the *Bill of Costs* incorporated in the *Judgment* in Cause No. CR 12355 to delete the requirement that Appellant pay $2,294.35 in court-appointed attorney's fees. *See Wolfe v. State*, 377 S.W.3d 141, 146 (Tex. App.—Amarillo 2012, no pet.). As modified, the trial court's judgment is affirmed.

## CONCLUSION

We modify the trial court's *Judgment* to delete the word "TRUE" from both the plea and findings as to the 1st and 2nd Enhancements, and we delete the order to pay $2,294.35 in court-appointed attorney's fees. As modified, the judgment is affirmed.


Patrick A. Pirtle
Justice


Do not publish.