**Opinion issued September 14, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00779-CR

————————————

**RANDOLPH JUAREZ MCCLINTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 18-DCR-082949A**

---

## MEMORANDUM OPINION

The State indicted Randolph Juarez McClinton for first-degree murder. *See* TEX. PENAL CODE § 19.02. McClinton pleaded guilty, waived his right to a trial by jury, and the case proceeded to the punishment phase. After rejecting McClinton's claim of sudden passion, the trial court sentenced him to 25 years in the Institutional

Division of the Texas Department of Criminal Justice and assessed a $10,000 fine. In his sole issue, McClinton argues that the evidence is legally and factually insufficient to support the trial court's determination that he was not acting under sudden passion when he caused the victim's death.

We affirm.

## Background

At the beginning of the punishment hearing, McClinton argued that the murder resulted from sudden passion and submitted the issue for determination by the trial court with no objection by the State.

A. Green, the sole eyewitness, testified at the hearing. Green was in a four-year relationship with T. Weatherall, the father of her two young children. Weatherall owned a cell phone that only worked when he was in range of a Wi-Fi signal. He sometimes used Green's cell phone to communicate with others.

In 2018, while using Green's cell phone, Weatherall saw flirtatious messages between Green and McClinton, a friend she met on Facebook. These messages angered Weatherall. He accessed Green's Facebook account, identified himself as Green's "baby daddy," and sent threatening messages to McClinton. The State introduced messages between Weatherall and McClinton during the punishment hearing. Weatherall asked McClinton, "Are you still trying to catch that fade or nah."

Green testified that "fade" in that context means fight. Weatherall clarified, "No gunplay just a fade."

Three days later, Weatherall woke Green up and told her that he wanted to buy some weed. Weatherall took Green's cell phone and messaged McClinton through Green's Facebook account. Weatherall did not disclose his identity. He asked to buy weed and told him to meet around the corner at the Pecan Park apartment complex.

Weatherall left the house. Green testified that Weatherall did not take a weapon with him, even though she told him that McClinton usually carried a gun. Green testified that she followed Weatherall because she anticipated a fight between the two. Weatherall and Green walked about five minutes away towards the apartment complex and saw McClinton parked in a black car. While McClinton was sitting in his car, Weatherall "knocked on his hood" and "calmly" asked him if he wanted to fight. Green heard Weatherall specifically ask, "What's up? Do you want to fight? You still want to catch that fade?" An argument between McClinton and Weatherall ensued. Green testified that neither McClinton nor Weatherall raised their voices, but Green saw them "going back and forth with each other."

McClinton asked Weatherall to leave him alone and brandished a gun. Green saw the gun and told Weatherall, "Let's go." Green and Weatherall quickly retreated to Green's home. Weatherall walked a few feet ahead of Green. When Green looked

3

back to where McClinton was originally parked, his car was no longer there. Green noticed McClinton drive past her and slowed down when he caught up to Weatherall. Green testified that McClinton's car was about six feet away from her and Weatherall. She also testified that if Weatherall "reached out a little bit," then "he probably could touch [McClinton's car]."

McClinton and Weatherall continued arguing while McClinton remained in his car. Green testified that she heard McClinton say, "What's up? Do you still want it? I'll shoot you in front of your momma, daddy, and daughter." Green testified that McClinton was driving slowly beside them and pointing the gun out of his car. McClinton suddenly fired one shot at Weatherall and rapidly drove away. Weatherall took a few steps before collapsing to the ground.

Dr. E. Barnhart, the Chief Medical Examiner for Galveston County, testified that she performed an autopsy on Weatherall. She testified that Weatherall had a single gunshot wound in his chest. The bullet "entered his left shoulder," "exited his right shoulder," and "passed through both lungs and the pulmonary trunk," which caused his death.

Detective S. Munoz testified that he interviewed McClinton on the day of the murder. He asked McClinton, "Why didn't you just drive away?" McClinton responded, "I was in fear for my life, he threatened to kill me, and I just reacted."

4

Detective Munoz also testified that he believed that McClinton was being "truthful" and that he "expressed remorse" about the entire situation.

At the pronouncement of sentence, the trial court rejected McClinton's claim of sudden passion and sentenced him to 25 years' incarceration in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine of $10,000.

McClinton appealed.

## Sufficiency of Evidence

McClinton contends that the evidence is legally and factually insufficient to support the trial court's finding at punishment that he did not kill Weatherall under the influence of sudden passion.

### A. Applicable law

A person commits murder if he either (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individua1. TEX. PENAL CODE § 19.02(b)(1), (2). Generally, murder is a first-degree felony. *Id.* § 19.02(c). However, at the punishment stage of a trial, the defendant may argue that he caused the death under the immediate influence of sudden passion arising from an adequate cause. *Id.* § 19.02(d). If the defendant proves sudden passion by a preponderance of the evidence, the murder charge is reduced from a first-degree

5

felony to a second-degree felony. *Id.* § 19.02(c), (d); *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005).

The Texas Penal Code defines "adequate cause" as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE § 19.02(a)(1). The defendant may not rely on a cause of his own making, such as precipitating a confrontation with the victim. *Cornett v. State*, 405 S.W.3d 752, 762 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE § 19.02(a)(2).

## B.    Legal sufficiency

### 1.    *Standard of review*

Although sudden passion is a punishment issue, it is analogous to an affirmative defense because the defendant has the burden of proof by a preponderance of the evidence. *See Matlock v. State*, 392 S.W.3d 662, 667 & n.14 (Tex. Crim. App. 2013). When a defendant argues on appeal that the evidence is legally insufficient to support an adverse finding on an affirmative defense, we construe the issue as a claim that the contrary was established. *Id.* at 669.

In *Brooks*, the Court of Criminal Appeals instructed appellate courts to apply the *Jackson v. Virginia* standard "in determining whether the evidence can support each element of a criminal offense that the State must prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). We review issues on which the defendant had the burden of proof by a preponderance of the evidence, like sudden passion, under a different standard and apply the legal sufficiency standard used in civil cases. *See Smith v. State*, 355 S.W.3d 138, 147–48 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

The civil legal sufficiency standard requires a two-step analysis. *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The first step is to examine the record for any evidence that supports the trial court's negative finding while ignoring all evidence to the contrary. *Id.* If no evidence supports the negative finding, then we proceed to the second step and examine the entire record to determine whether the evidence establishes the affirmative defense. *Id.* We must defer to the fact finder's determination of the weight and credibility to give the testimony and the evidence at trial. *Id.*

Evidence is legally insufficient to support the fact finder's rejection of sudden passion if the defendant "establishes that the evidence conclusively proves his

affirmative defense" and that "no reasonable [fact finder] was free to think otherwise." *Matlock*, 392 S.W.3d at 670 (citation omitted).

## 2. *Analysis*

The evidence reflects two encounters between Weatherall and McClinton. The first encounter involved Weatherall accosting McClinton and asking him to fight. The second encounter began when McClinton drove up to Weatherall and threatened to shoot him. Because prior provocation cannot raise a claim of sudden passion, our review focuses on the second encounter. *See* TEX. PENAL CODE § 19.02(a)(2); *Hobson v. State*, 644 S.W.2d 473, 478 (Tex. Crim. App. 1983) (en banc) (murder solely resulting from former provocation alone cannot raise a claim of sudden passion).

The record lacks a showing of adequate cause to support McClinton's claim of sudden passion. McClinton contends that the evidence shows that Weatherall confronted him in a threatening manner and asked him to fight, and this confrontation placed him in "fear [of] his life." Even if the initial confrontation placed McClinton in fear of his life, this fear alone does not support rejecting the trial court's sudden passion finding. *Daniels v. State*, 645 S.W.2d 459, 460 (Tex. Crim. App. 1983) (en banc) ("[A] bare claim of 'fear' does not demonstrate 'sudden passion arising from adequate cause.'"). The evidence shows that McClinton precipitated a confrontation with Weatherall during the second encounter. Green

8

testified that she and Weatherall walked away from the initial confrontation when they saw McClinton's gun. That ended the confrontation. McClinton then left his parking spot and drove up to Weatherall to engage him again. *See Moncivais*, 425 S.W.3d at 408 ("Anticipation of and preparation for the fight constitutes some evidence that Moncivais had time to deliberate regarding his actions."). McClinton told Detective Munoz that he "just reacted" when he chose to provoke another argument with Weatherall rather than drive away. McClinton became the aggressor, which is insufficient to establish adequate cause. *See Hernandez v. State*, 127 S.W.3d 206, 211 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("Ordinary anger or causes of a defendant's own making are not legally adequate causes.").

During the second encounter, the evidence reflects that Weatherall and McClinton exchanged derogatory words with each other before the shooting. A verbal confrontation, without more, cannot support a finding of sudden passion because insulting language does not rise to the level of adequate cause. *See, e.g.*, *McKinney*, 179 S.W.3d at 570 (yelling and pushing do not rise to the level of adequate cause); *Castellano v. State*, No. 01-14-00486-CR, 2015 WL 3981807, at *3 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet.) (mem. op., not designated for publication) (affirming jury's rejection of defendant's claim of sudden passion where evidence reflected that victim yelled at the defendant, called him names, and tried to hit him with her fists before defendant strangled

9

victim). While Weatherall's statements to McClinton might have produced an "ordinary" level of anger or rage in a reasonable person under these circumstances, they would not "drive a person of ordinary temper to a violent passion" or "make an ordinary person's mind incapable of cool reflection." TEX. PENAL CODE § 19.02(a)(1); *Dukes v. State*, 486 S.W.3d 170, 181 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (op. on reh'g) (citing *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013)); *Esquivel v. State*, No. 01-16-00301-CR, 2017 WL 3910793, at *9 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, pet. ref'd) (mem. op., not designated for publication).

Nor is there evidence of adequate provocation. The evidence reflects that Weatherall was not a threat to McClinton because he was unarmed, walking away from the initial confrontation, and standing about six feet away from McClinton's car. McClinton pulled a gun on Weatherall and threatened him before shooting and killing him. Green testified that she heard McClinton say, "What's up? Do you still want it? I'll shoot you in front of your momma, daddy, and daughter." McClinton suddenly carried out his threat and fatally shot Weatherall. The trial court could have concluded based on Green's testimony that McClinton precipitated the second confrontation that led to Weatherall's death and that Weatherall did not adequately provoke McClinton. *See Cornett*, 405 S.W.3d at 763.

In examining the record for evidence that supports the trial court's negative finding on the issue of sudden passion, while ignoring contrary evidence, there is some evidence that McClinton did not kill Weatherall out of sudden passion arising from adequate cause because some evidence showed that McClinton precipitated the confrontation. *See Smith*, 355 S.W.3d at 149 (legally sufficient evidence where record showed defendant precipitated a confrontation that led to victim's death); *Trevino v. State*, 157 S.W.3d 818, 822 n.4 (Tex. App.—Fort Worth 2005, no pet.) (evidence insufficient to raise claim of sudden passion because defendant's conduct precipitated victim's action); *Perez-Vasquez v. State*, No. 01-15-00882-CR, 2018 WL 2727761, at *14 (Tex. App.—Houston [1st Dist.] June 7, 2018, pet. ref'd) (mem. op., not designated for publication).

We hold that the evidence supporting the trial court's negative finding on McClinton's sudden passion issue is legally sufficient. We need not address whether McClinton proved sudden passion as a matter of law because that prong only applies in the absence of any evidence to support the trial court's finding. *See Moncivais*, 425 S.W.3d at 408.

## C.     Factual sufficiency

### 1.     *Standard of review*

In reviewing an issue on which the defendant has the burden of proof by a preponderance of the evidence, we apply the factual sufficiency standard in *Meraz*

11

*v. State*, 785 S.W.2d 146, 154–55 (Tex. Crim. App. 1990) (en banc). *See Cleveland v. State*, 177 S.W.3d 374, 390–91 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Under the *Meraz* standard, we review all of the evidence in a neutral light to determine whether the judgment is so "against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Matlock*, 392 S.W.3d at 671. "We may not, however, intrude on the fact finder's role as the sole judge of the weight and credibility of the witnesses' testimony." *Moncivais*, 425 S.W.3d at 409.

## 2. *Analysis*

McClinton relies heavily on the evidence showing that Weatherall provoked him because he was unaware that Weatherall, and not Green, was communicating with him on Facebook to arrange the weed transaction. McClinton contends that had he known it was Weatherall setting him up to fight, then he would not have shown up that day because Weatherall had threatened him before.

On cross-examination, Green testified that she met McClinton through Facebook because she saw his post advertising marijuana. Afterward, she often contacted McClinton to buy marijuana. Over time, Green began to sense that McClinton was interested in her when he started "hitting on" her. Green and McClinton continued to exchange flirtatious messages through Facebook. Green

12

testified that she met McClinton to buy marijuana one time and then they had sex later that day because she had not seen Weatherall in a month.

Green never told Weatherall that McClinton was interested in her or that they had sex. Instead, she merely downplayed the nature of their relationship and told him that McClinton was just her friend. Weatherall later discovered the flirtatious messages between Green and McClinton, which made him "pissed off" and "angry." Green eventually called McClinton in Weatherall's presence and told him that she did not want to pursue a relationship with him and that she wanted to be with Weatherall. She testified that she no longer communicated with McClinton after that.

Weatherall did not have a reliable phone. At times, Weatherall used Green's phone, logged into her Facebook account, and sent messages to people under her name. Days before the shooting, McClinton identified himself and sent Weatherall a Facebook message through Green's account. Green testified that they were threatening each other. She also testified that Weatherall later sent McClinton a Facebook message pretending to be Green and asked him to meet up to buy marijuana as a "set up." According to Green, Weatherall asked to buy marijuana solely because he wanted to fight McClinton. After seeing the Facebook messages, Green accompanied Weatherall to buy marijuana from McClinton "to make sure that they didn't fight." She testified that she knew that Weatherall and McClinton did not like each other before the shooting. She also testified that she tried to talk Weatherall

13

out of the confrontation with McClinton, but Weatherall was "angry" when he walked out the door to meet McClinton. She told Weatherall that McClinton regularly carried a gun. Still, Weatherall wanted to fight McClinton.

Weatherall approached McClinton's car and "knocked" on the hood. McClinton told Weatherall to leave him alone and displayed a gun. Green testified that when she and Weatherall saw McClinton's gun and walked away, the altercation between McClinton and Weatherall was over. She also testified that Weatherall was no longer angry with McClinton. Weatherall was unarmed and only confronted McClinton to fight, not engage in a shootout. Weatherall therefore walked back to Green's home.

McClinton's reliance on all the evidence of Weatherall provoking him and placing him in fear before the second encounter is unavailing. *See Hobson*, 644 S.W.2d at 478 (former provocation cannot raise a claim of sudden passion); *Daniels*, 645 S.W.2d at 460 (fear is inadequate to establish sudden passion arising from adequate cause). McClinton initiated a second encounter. *See Cornett*, 405 S.W.3d at 762 ("The defendant may not rely on a cause of his own making, such as precipitating a confrontation with the complainant."). When Green and Weatherall walked away, McClinton approached Weatherall, pointed a gun at him, and threatened to shoot him before doing so.

14

We therefore conclude that the evidence is factually sufficient to support the trial court's negative finding on the issue of sudden passion. *See Perez v. State*, 323 S.W.3d 298, 305 (Tex. App.—Amarillo 2010, pet. ref'd) (finding evidence factually sufficient to support jury's negative finding on issue of sudden passion because some evidence showed that defendant initiated confrontation with complainant and others, and this confrontation led to complainant's death). In viewing the record in a neutral light, we cannot say that the judgment is so "against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Matlock*, 392 S.W.3d at 671.

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).