**AFFIRMED and Opinion Filed December 15, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00786-CR**

**JOSHUA CALEB POTTER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F-1812453-X**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Garcia
Opinion by Justice Garcia

Appellant fired his pistol at his girlfriend eleven times. The first shot was to her head, and he continued pulling the trigger until the gun was empty. He was convicted of murder and the jury assessed punishment at life in prison.

In his sole issue on appeal, appellant argues the evidence is legally insufficient to support the jury's negative finding on the issue of sudden passion. As discussed below, we affirm the trial court's judgment.

### I. BACKGROUND

On the night in question, appellant called 911 and told the operator that he "snapped" and shot his girlfriend after he caught her cheating on him. When police

and paramedics arrived, appellant was waiting for them on the front porch. Angelica Talbot's body was found lying on the bed in appellant's bedroom. She had eleven gunshot wounds, including a gunshot wound to her forehead, eight to the left side of her chest, one to her left forearm, and one to the second finger of her left hand.

Appellant told Officer Victoria Grayson, one of the officers at the scene, that he shot his girlfriend after he discovered she was cheating on him. Appellant was calm, and told Officer Grayson that Talbot was hitting and pushing him, and he just "snapped." He claimed that when he pointed his gun at her, she said, "'shoot me, shoot me," and he blacked out and shot her. Appellant said he shot Talbot with his "Glock 26," which he placed in his safe after the shooting. The ten-round magazine inside the Glock was empty when the police retrieved it from the safe.

Detectives Jeremy Chevalier and Lauryl Duncan interviewed appellant after the offense. During the videotaped interview, appellant admitted he shot Talbot. Appellant told the detectives that he began a sexual relationship with Talbot approximately two months before the shooting when Talbot separated from her husband. After the relationship began, appellant spent approximately five days in jail. During that time, Talbot went through his cell phone and discovered text messages between appellant and other women. After making this discovery, Talbot ended their relationship and went back to her husband.

Appellant and Talbot later reconciled. Appellant deleted all his social media and blocked the women he was messaging to make Talbot feel better.

On the night of the offense, appellant noticed that Talbot was acting weird. Instead of paying attention to the movie they were watching, she was on her cell phone, and she would not let appellant see the phone. Appellant initially thought she was mocking him, but then he discovered "she was doing the same thing I was doing, she was talking to some guy." Appellant called the man and told him to stop calling and texting Talbot. Talbot began crying and hit appellant a few times.

When appellant asked Talbot where their relationship went from there, she told him they could just be "f– buddies." Appellant thought she was being very cold about their relationship. Talbot told him, "At least I don't have all my stuff here, it'll be easy to leave." Appellant then walked to his side of the bed, sat down, and just looked at Talbot. Next, appellant picked his gun up off the floor and loaded it by "chambering the round." Appellant did not keep a round in the chamber because he liked the time it gave him to think about the situation.

Appellant pointed the gun at Talbot and said, "Tell me why I shouldn't shoot you right now." According to appellant, Talbot responded, "I don't care, just shoot me." Appellant claimed he blacked out, shot Talbot in the head, and when she fell over, kept shooting until the magazine was empty. Appellant remembered his shooting stance and how fast he pulled the trigger. He was approximately three to four feet away from her when he shot her. Appellant told the detectives he then put the gun in his safe because he did not want anything else to happen, or to hurt anyone else.

Appellant did not testify at the guilt phase of his trial. The jury was charged on the lesser-included offense of manslaughter, but the jury convicted appellant of murder.

## II. ANALYSIS

Appellant's sole issue argues the evidence is legally insufficient to support the jury's rejection of his sudden passion defense. We disagree.

The Texas Penal Code addresses both (1) murders and (2) murders committed under the influence of sudden passion. TEX. PENAL CODE ANN. § 19.02. It provides that a person commits first-degree murder if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *Id.* § 19.02(b)(2). But if the accused caused the death "under the immediate influence of sudden passion arising from an adequate cause," the offense is second-degree murder. *Id*. § 19.02(d). Specifically, §19.02(d) provides:

> At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

*Id.* "Adequate cause" means a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id*. § 19.02(a)(1). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the

—4—

offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2). The defendant has the burden of production and persuasion to prove sudden passion. *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013). A defendant must prove sudden passion "in the affirmative by a preponderance of the evidence." TEX. PENAL CODE ANN. § 19.02(d).

Because the defendant has the burden of proof by a preponderance of the evidence, sudden passion is akin to an affirmative defense. *See Matlock v. State*, 392 S.W.3d 662, 667 n.14, 671 (Tex. Crim. App. 2013). And, as a defense with a preponderance-of-the-evidence burden of proof, sudden passion may be evaluated for both legal and factual sufficiency. *See Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015); *Matlock*, 392 S.W.3d at 667, 669–72.

Here, appellant challenges only the legal sufficiency of the evidence. When a factfinder rejects a sudden passion finding, we review the evidentiary sufficiency by searching the record for a scintilla of evidence favorable to the factfinder's refusal to make that finding and by disregarding all evidence to the contrary unless a reasonable factfinder could not. *Butcher*, 454 S.W.3d at 20 (citing *Matlock*, 392 S.W.3d at 669–70). The failure to make the finding should not be overturned on legal sufficiency grounds unless the appealing party establishes that the evidence conclusively proves his sudden-passion defense, and no reasonable factfinder was free to think differently. *Id.*

Appellant testified in support of his sudden passion theory during the punishment phase of trial. He said that he and Talbot were watching a movie in his bedroom on the night of the offense. When he noticed she was on her phone instead of watching the movie, he asked to see her phone. Initially, she would not give him the phone, but eventually threw it on the floor. Appellant picked it up and saw that she was texting another man. Appellant called the man, whose name was Frank, and told him to stop calling Talbot because she was his girlfriend.

Talbot became very upset; she cried and threw things at appellant and told him she could never trust him again. Appellant did not understand why she was upset with him, because she was the one who was caught cheating, and he felt defeated. Appellant claimed Talbot made him feel like he was nobody; telling him, "It's going to be easy for me to leave you. I don't have any of my things here." She also told him all they would only ever be "f– buddies." Appellant was hurt because he really loved her and wanted more. The thought of losing Talbot again devastated him.

Appellant testified that he walked to the other side of the bed and looked at Talbot. He put his head down and saw his gun on the floor. It was in a gun holster in his pants. Appellant took the gun out of the holster and chambered a round. He told Talbot to stop attacking him and telling him how easy it would be to leave. Appellant claimed he could not remember if he closed his eyes, but it became dark, and when he opened his eyes, he was shooting her. Appellant did not know where he shot Talbot.

On cross-examination, the State asked appellant about his prior relationship with a woman named Brittany. Appellant admitted to sending her "a bunch" of harassing text messages, and when she angered him, he said "You think I'm crazy; you don't know crazy." Days after sending that message, he tried to buy a gun.

When asked about the night he shot Talbot, appellant said he picked the gun up off the floor and pointed it down while he loaded it. When he shot Talbot in the head, she fell back on the bed. Appellant admitted he had to pull the trigger each time he shot.

Appellant maintains that the "adequate cause" producing his sudden passion arose from his discovery that Talbot was unfaithful. The alleged proof of infidelity consisted of the text messages on Talbot's phone, which appellant described as "cheating, in a sense." But even if the jury concluded the text messages evinced infidelity, they could nonetheless have concluded this would not produce a degree of anger or rage sufficient to render the mind incapable of cool reflection. *See Bradshaw v. State*, 244 S.W.3d 490, 503 (Tex. App.—Texarkana 2007, pet. ref'd) (even taking defendant's claim that he was overwhelmed by learning of his estranged wife's infidelity as true, the jury could have concluded that such an event was not an adequate cause giving rise to sudden passion).

Moreover, appellant's discovery of the text messages did not immediately precede the shooting. Appellant called the phone number Talbot was texting and told the man who answered not to contact Talbot anymore. A rational jury could have

concluded this gave appellant adequate time for cool reflection. *See Herrera v. State*, 513 S.W.3d 223, 228 (Tex. App.—San Antonio 2016, no pet.) ("Sudden passion requires the circumstances be such as to give rise to an immediate influence of sudden passion."); *see also Perez v. State*, 323 S.W.3d 298, 306 (Tex. App.—Amarillo 2010, pet. ref'd) (factfinder may choose to believe all, some, or none of the testimony presented).

Indeed, appellant did not retrieve his firearm until Talbot told him she no longer wished to date him. Verbal taunts and terminating a relationship, however, are generally not sufficient causes to arouse sudden passion. *See McKinney v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005) ("yell[ing]" and "verbal taunting and physical pushing" insufficient to constitute adequate cause justifying the issuance of a jury instruction on sudden passion); *McClinton v. State*, No. 01-20-00779-CR, 2021 WL 4156012, at *4 (Tex. App.—Houston [1st Dist.] Sept. 14, 2021, no pet.) (mem. op., not designated for publication) ("A verbal confrontation, without more, cannot support a finding of sudden passion because insulting language does not rise to the level of adequate cause."); *Gaston v. State*, 930 S.W.2d 222, 226 (Tex. App.—Austin 1996, no writ) (a wife's "nagging, taunting, and promising a divorce and property squabble" not adequate causes giving rise to sudden passion).

Appellant's actions also do not show that he was emotionally aroused to the point he would be incapable of cool reflection. *See Gonzales*, 717 S.W.2d at 357. Although he claims he blacked out, he was calm when the police arrived. He was

also capable of remembering the words spoken by each party before the shooting, where each person was in the room, how he loaded the gun, aimed, and fired the gun, and what he did with immediately after the shooting.

Appellant said he never kept his gun loaded because he liked to have time to think before using it. The jury could reasonably have concluded that he had time to think here where he picked the gun up off the floor, loaded it, pointed it at Talbot and said, "Tell me why I shouldn't shoot you right now." If it appears that a defendant acted "purposefully to achieve his stated intention," his conduct does not satisfy the definition of sudden passion. *Drousche v. State*, No. 03-96-00442-CR, 1997 WL 759638, at *3 (Tex. App.—Austin Dec. 11, 1997, pet. ref'd) (mem. op., not designated for publication).

Under these circumstances, we conclude that the record contains some evidence to support the jury's negative finding on sudden passion. *See Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). We need not address whether appellant proved sudden passion as a matter of law, because that part of the analysis only applies in the absence of any evidence to support the jury's negative finding. *Id.* at 408. We hold that legally sufficient evidence supports the jury's negative finding on sudden passion and resolve appellant's sole issue against him.

The trial court's judgment is affirmed.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220786F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JOSHUA CALEB POTTER,
Appellant

No. 05-22-00786-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F-1812453-X.
Opinion delivered by Justice Garcia. Justices Partida-Kipness and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 15, 2023